LOCAL 143 INTERNATIONAL UNION OF OPERATING ENGINEERS *et al.*, Plaintiffs-Appellees, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, *et al.*, Defendants-Appellants.

First District (4th Division)   No. 86—2404

Opinion filed May 14, 1987.

Patricia J. Whitten, of Chicago (William J. Quinlan and Fernando Colon, of counsel), for appellant Board of Education of City of Chicago.

Richard F. McPartlin, of Chicago, for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Local 143 International Union of Operating Engineers (union) and several of its individual members who are employed by the defendant board of education of the city of Chicago (board), brought this declaratory judgment action against the board, the general superintendent of schools, and the commissioner of personnel of the city of Chicago seeking a declaration that the board is required to follow the civil service law in filling vacancies in the position of district supervising engineer. The trial court granted summary judgment in favor of the union, and the board has appealed, contending that: (1) the Illinois School Code (Ill. Rev. Stat. 1985, ch. 122, par. 1—1 *et seq.*) grants the board discretion in choosing whether or not to follow the

civil service law in making personnel appointments; (2) the judgment of the trial court is impossible to implement because the Civil Service Commission of Chicago is no longer in existence; and (3) there is no actual controversy between the parties sufficient to warrant declaratory relief.

In its complaint for declaratory relief, the union alleged that prior to 1984, the board filled vacancies in the position of district supervising engineer from registers of eligible candidates compiled from the results of promotional examinations limited to employees in the next lower job classification, engineer custodian grade No. 5. At that time, the city of Chicago came within the provisions of the "Civil Service in Cities" law, codified as section 10—1—1 of the Illinois Municipal Code (Municipal Code) (Ill. Rev. Stat. 1985, ch. 24, par. 10—1—1 *et seq*). Pursuant to these provisions, the city established a Civil Service Commission, which classified personnel positions, conducted examinations, and performed various other functions related to the implementation of the civil service law. While the Civil Service Commission was in existence, the board relied upon it to conduct competitive promotional examinations and create registers of successful candidates from which the board made its personnel appointments.

In 1975, the city of Chicago, pursuant to its home-rule powers, enacted section 25.1 of the city of Chicago Municipal Code (Chicago Municipal Code sec. 25.1—1 *et seq*. (1982)), which adopted a city Personnel Code in place of the civil service law contained in the State Municipal Code. (*Resman v. Personnel Board* (1981), 96 Ill. App. 3d 919, 422 N.E.2d 120.) The Civil Service Commission was abolished at that time and the city personnel board was established in its place. As a result, the last promotional examination for the position of district supervising engineer was held in 1974. The board sometime thereafter enacted the following rule adopting the system of "career service" contained in the city Personnel Code:

> "Career Service Appointments. All employees of the Board of Education with the exception of the General Superintendent of Schools, heads of general departments now in existence or hereafter established, members of the teaching force, the Attorney and assistant attorneys, the Secretary, Assistant Secretary, and members of the Board of Examiners, shall be appointed pursuant to the ordinances of the City of Chicago providing for creation and regulation of the rules of said Department. All Career Service appointments, including exempt positions, shall be made by a majority of the full membership of the Board of Education." (Rules of Board of Education of the

City of Chicago, ch. IV, Personnel Policies, sec. 4—1.)

The board in its appellate brief states that since 1975, "[c]ompetitive examinations pursuant to the City of Chicago Personnel Code and competitive examinations prepared and administered by the Board of Examiners of the Board of Education of the City of Chicago have been conducted *** and eligible rosters have been prepared from those results, but no Civil Service appointments have been made."

On February 28, 1984, the board issued a personnel bulletin soliciting letters of application for the position of district supervising engineer from certified engineer custodians, grade No. 4 or higher. There was no indication that a competitive promotional examination would be held. On April 26, 1984, counsel for the union sent a letter to the board requesting an explanation as to why the position of district supervising engineer had been removed from the career service examination procedure. The board did not respond. On July 23, 1984, two persons holding the position of engineer custodian grade No. 5 were given non-civil service appointments as district supervising engineers; another engineer custodian grade No. 5 was given a provisional appointment as a district supervising engineer.

The union then filed the instant lawsuit requesting the trial court to declare that the board was required to follow the civil service law in filling the position of district supervising engineer. In paragraph 11 of its complaint, the union alleged that "there is an actual controversy between plaintiffs and defendants involving construction of the Civil Service Act and School Code." The board expressly admitted this allegation in its answer. On the union's motion, the trial court granted summary judgment in favor of the union, finding that the civil service provisions of the Illinois Municipal Code were made applicable to the board by sections 34—13 and 34—15 of the School Code (School Code) (Ill. Rev. Stat. 1985, ch. 122, pars. 34—13, 34—15). The court further ruled that the board had no power to exempt the position of district supervising engineer from the civil service law and that it accordingly had a duty to hold a promotional examination for that position limited to applicants holding the position of engineer custodian grade No. 5, to create an eligible register of successful candidates, and to fill vacancies in the position of district supervising engineer by appointments from that register.

On appeal, the board first construes the provisions of the School Code as giving it discretion to choose whether or not to follow the civil service provisions of the Municipal Code in making personnel appointments.

Section 34—13 of the School Code exempts certain high-level man-

agement personnel from the civil service law as follows: "The appointment and removal of the general superintendent of schools, the heads of other general departments now in existence or hereafter established, the attorney, and all assistant attorneys shall not be subject to the civil service law." (Ill. Rev. Stat. 1985, ch. 122, par. 34—13.) Section 34—15, the provision which the board characterizes as permissive rather than mandatory regarding application of the civil service law, states that "[p]ursuant to the provisions of the civil service law the board may appoint, or provide for the appointment of, such other officers and employees as it deems necessary, except as otherwise provided herein. *** This Section does not apply to teachers." Ill. Rev. Stat. 1985, ch. 122, par. 34—15.

■ ■ The primary rule of statutory construction is to ascertain and effectuate the intent of the legislature. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277, 469 N.E.2d 167, 171.) In determining such intent, the statute must be read as a whole and all relevant parts considered. (*People v. Jordan* (1984), 103 Ill. 2d 192, 206, 469 N.E.2d 569, 576.) Where the language used in the statute is clear and unambiguous, the proper function of the judiciary is to enforce the law as enacted by the legislature. (*People v. Ellis* (1984), 128 Ill. App. 3d 180, 182, 470 N.E.2d 524, 526.) Although there is a presumption that the legislature in amending a statute intended to make some change in the existing law, the presumption is not conclusive and may be overcome by more persuasive considerations. *Bruni v. Department of Registration & Education* (1974), 59 Ill. 2d 6, 11-12, 319 N.E.2d 37, 40, *cert. denied* (1975), 421 U.S. 914, 43 L. Ed. 2d 780, 95 S. Ct. 1573.

■ In our view, the wording of section 34—15 of the School Code, quoted above, is plain and unambiguous. While the board is given discretion in determining the number and kind of employees to appoint, it appears clear that all such appointments must be made pursuant to the civil service law, unless otherwise provided by the statute. The section then expressly exempts teachers from its coverage. Our construction of section 34—15 is supported by reference to section 34—13, which enumerates certain high-level management employees whose appointments "shall not" be subject to the civil service law. The specific exclusion of these positions leads to the conclusion that those not excluded were intended to be included. *In re Cash Currency Exchange, Inc.* (7th Cir. 1985), 762 F.2d 542, *cert. denied sub nom. Fryzel v. Cash Currency Exchange, Inc.* (1985), 474 U.S. 904, 88 L. Ed. 2d 232, 106 S. Ct. 233.

■ In support of its argument that the legislature intended to

give the board discretion in determining whether to follow the civil service law, the board notes that prior to 1933, the provision now codified as section 34—15 read as follows: "All appointments of other employees of the board of education, except as herein otherwise provided, shall be made pursuant to the provisions of the civil service law ***." (1917 Laws of Illinois 725-26.) The board argues that because the word "shall" was used in the prior provision, the word "may" as it appears in the current wording of section 34—15 indicates that the legislature intended to change the law to make application of the civil service law permissive rather than mandatory. This argument completely ignores the position which the word "may" occupies in the current provision. As previously stated, section 34—15 provides that "[p]ursuant to the provisions of the civil service law the board may appoint *** such other officers and employees as it deems necessary." The word "may" in no way modifies or relates to the phrase "pursuant to the civil service law." Rather, as previously stated, it gives the board discretion with regard to the number and kind of employees to appoint. We express no disagreement with the proposition that an amendment is ordinarily presumed to change existing law. However, we cannot adopt a construction which is clearly contrary to the unambiguous language used by the legislature. We therefore conclude that the trial court was correct in ruling that section 34—15 of the School Code mandates the board to follow the civil service provisions of the Municipal Code. Because the position of district supervising engineer is not a position exempted from application of the civil service law by section 34—13, the board had no authority to fill the position contrary to the provisions of the civil service law.

■ The board next contends that because the Civil Service Commission of the city of Chicago is no longer in existence, the ruling of the trial court directing the board to conduct competitive examinations, compile eligible registers, and perform other functions formerly performed by the Commission is legally impossible to implement. The board argues that the city of Chicago Personnel Code does not apply to board personnel and that even if it did, the board is not a home rule unit and therefore lacks power to adopt the Personnel Code insofar as it conflicts with the civil service provisions of the Municipal Code.

With respect to this issue, the union points out that the board has been conducting its own competitive examinations since 1975 and that it may continue to do so, following the provisions of the Personnel Code to the extent that they do not conflict with the civil service provisions of the Municipal Code.

Section 34—18 of the School Code confers upon the board several enumerated powers, then provides that:

"The specifications of the powers herein granted are not to be construed as exclusive but the board shall also exercise all other powers that they may be requisite or proper for the maintenance and the development of a public school system, not inconsistent with the provisions of this Code which apply to all school districts." (Ill. Rev. Stat. 1985, ch. 122, par. 34—18.)

Clearly, the appointment of personnel to operate and maintain the physical plants of school buildings is necessary for the proper maintenance and development of the school system. Section 34—18 thus gives the board power to make those appointments "not inconsistent with the provisions of this Code." As previously stated, the School Code mandates application of the civil service law to the board with respect to those personnel positions not specifically exempted, and the position of district supervising engineer is not an exempt position. It therefore appears that the legislature has authorized the board to make whatever provisions are necessary to accomplish this result. For this reason, we must reject the argument that the trial court's ruling is legally impossible to implement.

■ The final contention raised by the board is that declaratory relief is not available because there exists no actual controversy between the parties. However, in answer to the union's complaint, the board specifically admitted the existence of an actual controversy sufficient to support declaratory relief. Because the board did not challenge, and in fact admitted, the propriety of declaratory relief in the trial court, we find that the issue is waived for purposes of this appeal. *Byron Material, Inc. v. Ashelford* (1975), 34 Ill. App. 3d 301, 306, 339 N.E.2d 26, 29.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.