OPINION OF THE COURT
Ira B. Warshawsky, J.
Decision after Trial
The plaintiff, Perry Lubov, an attorney, brought this action *897 for what he has contended is his 16% share of a professional corporation (EC.) (incorporated in 1992), which had originally been a partnership. This action was originally started as of October 1, 2002. Lubov had left the EC. as of February 1, 1999. Lubov’s complaint was amended four times over the next five years. After the trial ended, he moved to conform the pleadings to the proof, now contending that Business Corporation Law § 1510 controlled his right to payment from his former partners/ shareholders. In his post-trial reply memorandum of law, he now adds claims for unjust enrichment and quasi contract. The claims are rejected by the court, having never appeared in any prior complaint or been mentioned in the motion to conform the pleading to the proof.
The complaint alleged four causes of action. The first and third were dismissed at trial. The second cause of action is for breach of contract — the breach of a shareholder’s agreement, claiming the EC. failed to make payments to him for the value of his shares as of February 1, 1999 when he left the EC. The fourth cause of action is for a declaratory judgment declaring that plaintiff continues today as a shareholder of the EC.
Flaintiff alleged in his complaint and testified at trial that while a partner at Horing & Welikson, the parties had entered into an agreement (approximately Dec. 1989) which provided, “upon withdrawal of one of the partners, his partnership interest would be redeemed by the partnership for an amount equal to the sum of his capital contribution and his respective partnership percentage of the total accounts receivable of the partnership in existence at the time of the withdrawal.”
The partnership then became a EC. and plaintiff alleged that the shareholders of the corporation agreed to adopt the same agreement as and for the shareholders of the new EC. Without going into detail, the proof at trial was less than convincing that there was either a written or oral agreement in existence at the time plaintiff was removed from the firm that controlled the rights of a departing shareholder. Thus, the second cause of action, claiming a breach of contract, is dismissed.
Apparently not disagreeing with the court’s position, plaintiff does not address any of his prior theories of entitlement to recovery in his written summation, but concentrates on the applicability of Business Corporation Law § 1510 to the EC., this action and the value of his shares. In his post-trial reply memorandum of law, plaintiff also argues that once he “retired” from the practice of law in April 2004, he now would fit within the *898 parameters of section 1510 even if the court finds he otherwise would not be covered by that section. If the court should reject that theory, he argues that Lewis v Vladeck, Elias, Vladeck, Zimny & Engelhard (57 NY2d 975 [1982]) should control.
The major shareholder of the EC. is Niles C. Welikson. Putting aside for the moment the prior multiple complaints of plaintiff, Welikson, for the entire length of this case, insisted that Lubov was never a partner or shareholder of the partnership which became a professional corporation. He maintained this position, despite the K-l forms issued to Lubov, until the trial actually started. It is based on this unbelievable position, maintained over five years, that plaintiffs counsel has requested attorney’s fees. The defense counsel belittles such request and in turn seeks counsel fees for the “frivolous conduct” of plaintiff, specifically, his multiple changing theories of liability and having to defend the new theory, relying on Business Corporation Law § 1510 and “public policy,” only raised at the time of trial. The court will address these requests at the end of the decision.
Professional service corporations are interesting creatures. Unlike regular corporations, in which ownership stakes can be obtained in most cases by any individual willing to pay the proper price, EC.s are limited to members of a particular profession. That these shareholders continue as eligible in the profession is a requirement of owning shares in a EC.
The popularity of P.C.s is owed to their combination of corporate and partnership legal structures that benefits professional groups, such as lawyers, doctors, and architects. Like a partnership, individual liability exists to the owners, but more like a corporation, owners are not exposed to the malpractice liabilities of other owners. This structure allows these professionals to work together, utilizing economies of scale, without fear of crushing malpractice destroying the whole entity. Specifically, it modifies the general rule that shareholders are not personally liable for corporate acts and indebtedness, and it reflects the common-law rule that a shareholder is merely liable for those torts that are committed by the shareholder or by those acting under his direct supervision and control. (We’re Assoc. Co. v Cohen, Stracher & Bloom, 103 AD2d 130, 134 [2d Dept 1984].)
The laws detailing professional service corporations are set forth in Business Corporation Law article 15, specifically Business Corporation Law §§ 1501-1516. Of the most import to the instant case are sections 1509 and 1510. Section 1509 discusses *899 disqualification of members of the corporation, and rules that if one “who has been rendering professional service to the public becomes legally disqualified to practice his profession within this state, he shall sever all employment with, and financial interests ... in, such corporation forthwith or as otherwise provided in section 1510.” And,
“[s]uch legal disqualification to practice his profession within this state shall be deemed to constitute an irrevocable offer by the disqualified shareholder to sell his shares to the corporation, pursuant to the provisions of section 1510 or of the certificate of incorporation, by-laws or agreement among the corporation and all shareholders, whichever is applicable.” (Id.)
Section 1510 sets out the law that P.C.s “shall purchase or redeem the shares of a shareholder in case of his death or disqualification . . . within six months ... at the book value of such shares as of the end of the month immediately preceding the death or disqualification of the shareholder.” Further, “[t]he certificate of incorporation, the by-laws of the corporation or an agreement among the corporation and all shareholders may modify this section by providing for a shorter period of purchase or redemption, or an alternate method of determining the price to be paid for the shares, or both.” (Id.)
Plaintiff contends that simple logic compels the court to extend the remedial policy of Business Corporation Law § 1510 to instances where an owner is discharged from employment, as opposed to dying or being disbarred. Essentially, plaintiff argues that “public policy” requires the court to apply Business Corporation Law § 1510 to our facts or otherwise plaintiffs 16% interest in the corporation will be made worthless by the action of the majority. Thus, any P.C. could remove a minority shareholder without compensating him or her for his or her interest.
Does “public policy” require or should the court at least consider that the public policy of the State of New York should allow the court to “legislate” and opine that Business Corporation Law § 1510 be expanded in scope to include providing a distribution right to a discharged/terminated shareholder of a professional corporation?
In Kraut v Morgan & Brother Manhattan Stor. Co. (38 NY2d 445, 451-452 [1976]), the Court stated:
“Although ‘public policy’ is a vague term, it ‘is to be *900 ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests’ (Muschany v United States, 324 US 49, 66). In a concise definition, thrice reiterated by this court (Glaser v Glaser, 276 NY 296, 302; Mertz v Mertz, 271 NY 466, 472; Straus & Co. v Canadian Pacific Ry. Co., 254 NY 407, 413), we have said that ‘when we speak of the public policy of the state, we mean the law of the state, whether found in the Constitution, the statutes or judicial records’ (People v Hawkins, 157 NY 1, 12). The rule cannot be otherwise for, as was long ago recognized, when courts attempt to define the limits of public policy without a firm foundation in precedent or law, they usurp the legislative function which is, of course, to define the public will (Cross v United States Trust Co. of N. Y., 131 NY 330, 343-344; Vidal v Girard’s Executor’s, 2 How [43 US] 127).”
Plaintiff has not referred the court to any constitutional rule, legislative enactment or court decision which supports a doctrine or public policy that would support an expansion of Business Corporation Law § 1510. As Judge Cardozo stated, courts should be “slow to substitute their own varying views of policy for those which have found embodiment in settled institutions, in every-day beliefs and practices, which have taken root and flourished.” (Messersmith v American Fid. Co., 232 NY 161, 164-165 [1921].)
One cannot say that the professional corporation has a long history in our law and in our everyday beliefs and practices and is so embodied within settled institutions. It has existed under our laws for over 35 years and there has been no amendment of the sections of the Business Corporation Law which control the professional corporation that would either expand section 1510 or independently expand the law to cover the distribution rights of a terminated shareholder.
As this case now turns on the interpretation of Business Corporation Law § 1510, we turn first to the canons of statutory interpretation. “Where the terms of a statute are clear and unambiguous, ‘the court should construe it so as to give effect to the plain meaning of the words used’.” (Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y., 86 NY2d 198, 204 [1995], quoting Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976].) Our objective in *901 this regard is “to discern and apply the will of the Legislature, not the court’s own perception of what might be equitable.” (Matter of Sutka v Conners, 73 NY2d 395, 403 [1989]; Matter of Orens v Novello, 99 NY2d 180, 185 [2002].) In the instant case, plaintiff argues that Business Corporation Law § 1510 should be interpreted to include an owner who is discharged, due to the seeming logical inconsistency of excluding such an owner. However, as the statute is clear and unambiguous, the plain meaning of the statute must rule, and it contravenes such an interpretation. Section 1510 in no way indicates that an obligation exists to purchase the shares of a discharged owner. While it does state that a EC. is obligated to purchase or redeem the shares of a deceased or disqualified shareholder, the absence of any instruction for a discharged owner in a statute rife with specificity seems to indicate that no remedy in such a case was contemplated by the legislature, in spite of what may seem illogical to plaintiff and, in fact, to the court.
In particular, when a statute “describes the particular situations in which it is to apply, ‘an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded’ (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240).” (Patrolmen’s Benevolent Assn. at 208-209.) In the case of Business Corporation Law § 1510 and the entire section, the legislature delineated the clear situations in which such purchase or redemption was mandated, and they are disqualification and death, respectively. Although plaintiff might accuse the statute of being illogical, there may be other reasons why discharged owners are not given a legal remedy. Perhaps the legislature preferred that such provisions be taken care of in the certificate, by-laws, or agreement, where EC.s could set terms based on numerous factors, such as the value an owner brought to a practice. Perhaps the legislature felt that the partnership aspect of a EC. is dominant, and, as such, shares do not have the same inherent worth as a typical corporation. Such speculation, however, is irrelevant for the court’s decision making. As it stands, the legislature has written a clear statute that spells out certain conditions for redemption or purchase, and these conditions are not met by plaintiff. However unfair this may seem, the court is not about to write new laws or replace the role of the legislature.
Although there are no New York cases cited by either party that deal with the issue of the discharge of PC. owners lacking an agreement covering such an event, a Florida case is instruc *902 tive. In Corlett, Killian, Hardeman, McIntosh & Levi, P.A. v Merritt (478 So 2d 828 [Fla Dist Ct App, 3d Dist 1985]), members of a law firm that withdrew from their association with the firm sought redemption of their ownership shares. In reviewing Florida legislation (that is similar to New York’s), the court found that in the absence of an agreement, there was no duty for the EC. to redeem such shares. In addition, Corlett rejected any concern that ethical concerns should place a duty on a EC. to redeem such shares, by reasoning that the statutes ascribe no duty of ethical conduct any higher than those of the Code of Frofessional Responsibility. While this court is not bound by the Florida ruling, the undersigned finds its analysis persuasive, as have courts in several states, including Arizona, Illinois, Utah and Washington. (See Fearnow v Ridenour, Swenson, Cleere & Evans, P.C., 213 Ariz 24, 138 P3d 723 [Sup Ct 2006]; Trittipo v O’Brien, 204 Ill App 3d 662, 561 NE2d 1201 [1st Dist 1990]; Berrett v Purser & Edwards, 876 P2d 367 [Utah 1994]; McCormick v Dunn & Black, P.S., 140 Wash App 873, 167 P3d 610 [2007].) As noted earlier, in his reply memorandum of law, raised for the first time in those papers, plaintiff calls for the court to extend section 1510 to the situation where a lawyer retires from the practice of law. In April 2004, plaintiff “retired” from the practice of law. This was approximately five years after his termination by Welikson. Elaintiff wishes the court to equate “retirement” with “legal disqualification.” This court will not. Plaintiff s retirement was, to our knowledge, voluntary. It does not fit the scenario as set forth in section 1510. Not only was the plaintiff no longer employed by Welikson, but his disqualification to be a shareholder in a professional corporation came through his own voluntary acts, i.e., he was not forced out of the professional corporation (due to a lack of license) which would trigger the offer to sell his shares. The court rejects this theory that “retirement from the practice of law” equals “disqualification from the practice of law” for the purposes of Business Corporation Law § 1510.
Considering all of the above, the court does not find Business Corporation Law § 1510’s neglect of the issue of discharged owners to be illogical, nor would a discharge without redemption be unethical. P.C.s are strange creatures, and perhaps the design of ownership and ownership rights are deliberately different from that of normal corporations and their ownership stakes. Despite what some may wish, as well, the court will not use this opportunity to enact legislation conferring such a *903 redemption right on discharged EC. owners. Perhaps the day will come when the legislature will find the time and inclination to resolve this problem found within professional corporations. Thus, the court rejects any claim by the plaintiff to an entitlement to a distribution from the defendant corporation. The court further finds that Lewis v Vladeck, Elias, Vladeck, Zimny & Engelhard (57 NY2d 975 [1982]) is not relevant to our facts in that there was an existing agreement to cover a departing shareholder in that case.
But what of plaintiffs remaining argument (fourth cause of action) for a declaratory judgment that he still is a holder of 16% of the EC. of Horing, Welikson & Rosen? Plaintiff does not address this in his summation. Plaintiff basically claimed during trial, as reflected by the testimony, that after he was terminated by the EC., his shares were redistributed amongst the remaining shareholders. Thus, plaintiffs real claim appears to be one of conversion (shares stolen or expropriated by the EC.). This fourth cause of action came into being as part of the third amended complaint in 2003. Thus, on its facts, it would be time-barred under CPLR 214 as a conversion claim. If it arises as part of Business Corporation Law § 1510, it would still be time-barred. As a declaratory judgment action, it would not be time-barred. However, plaintiff resigned from the practice of law as of April 13, 2004. Thus, he cannot be a member or shareholder of a legal professional corporation (Business Corporation Law § 1504 [a]) since he can no longer render legal services. Plaintiffs argument in his reply memorandum of law, that such “defense relating to the statute of limitations are without merit because the court granted plaintiffs motion to conform the pleading to the proof,” is rejected.
For all of the above reasons, the fourth cause of action is dismissed.
Attorney’s Fees
Plaintiff requests attorney’s fees due to the actions of Welikson which he claims delayed the proceedings by his denial, for five years, that plaintiff, Perry Lubov, was ever a partner in the predecessor entity, or a member/shareholder of the professional corporation of Horing & Welikson, EC. Plaintiff bases his claim for sanctions on 22 NYCRR 130-1.1 (a)-(c), frivolous conduct, conduct that cannot be supported by (a) a “reasonable argument for an extension, modification or reversal of existing law”; (b) conduct engaged in primarily to delay or prolong the resolu *904 tion of an action or to “harass or maliciously injure another”; or (c) asserting false material factual statements. (22 NYCRR 130-1.1 [c].)
What did Welikson do or not do?
1. For over five years he denied plaintiffs position as a partner or shareholder despite evidence to the contrary.
2. Despite arguing that “accounts receivable” were not an asset of the corporation nor part of its books and records, he admitted he had claimed it as an “asset in financial statements submitted to the bank when applying for a line of credit for the EC.”
3. Defendant’s lawyers refused to produce business records during discovery.
What of Lubov? He changed his theory of prosecution four or perhaps five times (not including the reply memorandum of law). He based his claim on a written partnership agreement, which was allegedly destroyed by Welikson.
Defense counsel argues that Welikson did not perjure himself, but rather changed his legal theory at trial, i.e., to change his position as to plaintiffs shareholder status, based upon the theory that a EC. may have shareholders even if no shares of stock had been issued by the EC.
Defendant points out that neither the original position of defendant nor the revised position altered plaintiffs claims (which continued to change through the trial). Perhaps the most disturbing part of the position taken by Welikson was that it had no support in case law. Mr. Welikson is a lawyer. He was represented by a lawyer. He stated under oath that Lubov had “never” been a shareholder. The court doubts his fellow shareholders believed they were not shareholders because no one gave them a piece of paper. Further, the overt and overwhelming evidence of the K-l distribution was prima facie proof that Lubov was a shareholder. For defense counsel to say his client changed his position because “it wasn’t worth the fight” is ludicrous.
This case has been prosecuted and defended in an unorthodox fashion. The actions of both sides have lengthened this action. The lack of cooperation in discovery by the defense, the unreasonable position taken by Welikson as to Lubov’s shareholder status, and the moving target of plaintiffs claims, all contributed to the fact that it took six years before this case came to trial. Both sides should contribute to the cost of running the court *905 based on their individual acts. However, the acts of plaintiff do not rise to the level of frivolous conduct, while those of the defendant do.
There was no basis in law or fact for the defendant to deny that plaintiff was either a shareholder of Horing & Welikson, EC. or a partner of the predecessor partnership. Nor is there a reasonable argument for the modification or reversal of the law in this area. Further, the court finds such a position was engaged in to harass or annoy plaintiff.
The defendant is sanctioned $2,000 in costs payable to plaintiff within 30 days of the date of this decision.
The second and fourth causes of action are dismissed as are all other theories raised by plaintiff in his post-trial memorandum.