LAWRENCE W. LASDAY, Indiv. and Derivatively on behalf of Larsid Incorporated, Plaintiff-Appellee, v. SIDNEY WEINER *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—92—1250

Opinion filed June 28, 1995.

Robert R. Benjamin and Beverly A. Benjamin, both of Chicago, for appellants.

Steven J. Teplinsky and James A. Roth, both of Chicago, for appellee.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Lawrence W. Lasday (hereinafter Lasday), filed a shareholder derivative suit in equity to recover corporate funds on behalf of Larsid, Incorporated (hereinafter Larsid), to prevent the removal of officers and to judicially dissolve the corporation. The trial court ordered defendant Sidney Weiner (hereinafter Weiner) to return $102,000, which he had previously appropriated for his own use, to an authorized Larsid bank account. Plaintiff then petitioned the court to recover the attorney fees expended to recover those funds. The trial court ordered defendant to personally pay interim attorney fees in the amount of $28,180.26. It is from this order defendant now appeals pursuant to Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a).

## FACTUAL BACKGROUND

In the late 1980's, Weiner, a businessman, was seeking to invest in a "Mister Bulky" franchise. Weiner contacted the franchisor, who suggested he contact Lasday, a small businessman who had experience managing and operating Mister Bulky stores. Together, Weiner and Lasday formed Larsid, a corporation to own and operate the Mister Bulky franchise in North Riverside, Illinois. Weiner made a capital contribution of approximately $158,000 to Larsid in exchange for 75% of its stock. Lasday exchanged some equipment and inventory for the remaining 25% of the Larsid stock. Lasday was designated the president of the corporation and Weiner the vice-president. Lasday was to manage the day-to-day affairs of the business. Larsid began operating the Mister Bulky store on October 20, 1986.

In early 1991, Weiner informed Lasday that he had found three buyers (hereinafter Buyers) who were willing to pay $240,000 for Weiner's stock in Larsid. In May of 1991, the Buyers also offered to purchase Lasday's 25% stake in Larsid. In preparation for closing this deal, Weiner requested Lasday provide him with the books, records and financial statements of Larsid so he could turn them over to the Buyers for inspection. The record is not clear as to exactly why Lasday never produced the records; however, it is certain that because of the lack of financial information, the Buyers refused to purchase the Larsid stock.

In July of 1991, Larsid entered into an alternative agreement with the Buyers to purchase the assets owned by the corporation. Lasday and Weiner agreed that all proceeds from the asset sale were to be split in accordance with the ratio of their stock holdings, to wit, Lasday was to receive 25% of the total sales price and Weiner was to receive 75% of the sales price. On July 5, 1991, the Buyers and Lar-

sid executed a formal agreement and the Buyers assumed control of the operation of the Mister Bulky franchise on that day. The asset sale was never completed due to some unresolved financial issues between Larsid and the Buyers.

At some point, Wiener had opened a corporate account at the Lakeside Bank in the name of Larsid. Wiener provided the bank with an unauthorized corporate resolution which stated that he was both president and secretary of Larsid. Lasday was unaware of the existence of this account and no provision was made for him to access any money which may have been on deposit there. Wiener directed the Buyers to wire transfer all payments for the asset purchase from Larsid to this account. Accordingly, the Buyers wire transferred $50,000 to the Lakeside Bank account on July 5, 1991, and an additional $87,000 on August 30, 1991.

In August and September, Lasday made repeated demands upon Wiener to release his 25% share of the funds received from the Buyers. Wiener refused to do so until such time as Lasday explained some perceived irregularities in the corporate accounting and provided the Buyers with the financial information required to close the sale of the business. Wiener, however, treated the funds deposited in the Lakeside Bank as his own and withdrew them almost immediately after they were deposited for his own personal use.

On October 18, 1991, Wiener delivered to Lasday, Lasday's wife and their attorneys a five-day notice pursuant to section 7.10(a)(i) of the Illinois Business Corporation Act of 1983 (805 ILCS 5/1.01 *et seq.* (West 1992)) that he would seek to remove Lasday and his wife as officers of Larsid. In response, Lasday filed a verified complaint in equity along with a motion for a temporary restraining order and preliminary injunction. On October 24, 1992, the trial court entered a temporary restraining order which ordered Wiener as follows:

> (a) to place all money and other assets he received from the Buyers of Larsid's assets into the existing corporate accounts of Larsid;
>
> (b) to make no other transfer of funds received from the Buyers of Larsid's assets;
>
> (c) to not discharge Lawrence Lasday and Joan Lasday as officers and directors of Larsid; and
>
> (d) to work with plaintiff and his counsel to complete the sale of Larsid's assets to the Buyers and to place all funds received therefor into Larsid's corporate account.

Weiner failed to comply with the court's order and was subsequently found in contempt of court on January 24, 1992. Larsid issued nonwage garnishments and citations to discover assets on Wie-

ner, Lakeside Bank and Sage-Chicago, Ltd., in an effort to collect the misappropriated funds. Following arguments on additional motions to quash the citations and stay the proceedings, all of which were denied by the trial court, Wiener returned the funds to the Larsid account on February 7, 1992. The trial court vacated the contempt order, and on February 12, 1992, Lasday filed his petition for interim fees and costs in the amount of $28,180.26 which the trial court granted.

## OPINION

■ It is settled Illinois law that absent a specific statute or a contractual agreement between the parties, attorney fees and ordinary expenses of litigation are not recoverable by the successful litigant. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) There is one well-recognized exception which holds that a court of equity or a court in the exercise of equitable jurisdiction may, in its discretion, order an allowance of attorney fees to a party who, at his own expense, has maintained a successful suit for the preservation, protection or increase of a common fund or of common property, or who has created at his own expense or brought into court a fund in which others may share with him. This is commonly known as the common fund doctrine. (*First National Bank of Chicago v. La Salle-Wacker Building Corp.* (1935), 280 Ill. App. 188.) The court must exercise its discretion according to equitable rules and principles and may direct payment to be made either from the common fund being protected by the suit or from the defendants individually. (*Ross v. 311 North Central Avenue Building Corp.* (1970), 130 Ill. App. 2d 336, 364 N.E.2d 406; *Lee v. Retirement Board* (1964), 31 Ill. 2d 252, 201 N.E.2d 361.) A court of review should not vacate an award of attorney fees absent a clear abuse of discretion. *De Fontaine v. Passalino* (1991), 222 Ill. App. 3d 1018, 584 N.E.2d 933.

■ Having established that the trial court was vested with the authority to order the payment of plaintiff's attorney fees, we now address defendant's specific charges of error by the trial court. Defendant initially contends that the award of attorney fees in a two-shareholder case is inappropriate as it violates the maxims of equity. Defendant reasons that in such a stockholder derivative action, if a defendant-shareholder is ordered to return money to a common fund, that individual, by virtue of his status as a shareholder, will ultimately be entitled to those very funds. Therefore, by requiring him to pay the plaintiff's attorney fees, the defendant will essentially be paying attorney fees to compel the return of his own funds. Defendant argues that this is particularly true in the instant case where

the defendant is the majority shareholder, both shareholders have agreed to dissolve the corporation and the monies in question are proceeds from the sale of corporate assets.

The logic of this argument is not irrefragable. Firstly, Illinois law is clear that attorney fees may be properly awarded in a derivative action even where there are only two shareholders. (*De Fontaine v. Passalino* (1991), 222 Ill. App. 3d 1018, 1038, 584 N.E.2d 947.) Secondly, simply because the two shareholders have agreed to wind down the corporation, it does not follow that either one or both may begin to treat corporate funds as personal funds.

All corporate formalities must be adhered to throughout the winding down process until the ultimate distribution of the proceeds of the sale to the shareholders. Moreover, the monies ultimately distributed to shareholders are the residue of the corporation. Shareholders do not have priority in the distribution of the proceeds from the dissolution of a corporation. As a matter of fact, they are last in line. To treat corporate funds as personal funds at this stage of the wind down ignores the superior rights of creditors, employees and others who have claims against the corporation. Therefore, for defendant to claim he returned his own money to the corporation is simply not true. The money usurped from the corporation did not belong to defendant because it had not traveled through the appropriate channels to be converted into a shareholder distribution.

■ Defendant next contends that the award of fees was premature because all the matters in controversy between the parties had not been resolved at the time of the award. Defendant cites *Bingham v. Ditzler* (1943), 320 Ill. App. 88, 49 N.E.2d 812, as support for his position. In *Bingham*, the court declined to award attorney fees until a final accounting could be made. The court held that it could not render a final order on attorney fees until it was in a position to know how much money had been recovered and how much service was rendered. We believe this is distinguishable from the case at bar.

While it is true that all matters in controversy between the parties have not been resolved at the time of the fee award, we believe that the issues raised in the original shareholder derivative action were resolved and concluded when Wiener deposited the $102,000 into the Larsid account. Moreover, the amount of money in controversy was a liquidated sum, to wit, $102,000. Therefore, it was appropriate that the trial court award attorney fees which related directly to the prosecution of those claims at that juncture in the litigation. The issues which remained pending relate to charges in a separate counterclaim that Lasday breached his fiduciary duties to Larsid along with a request for an accounting. Because Wiener is

prosecuting those charges against Lasday on behalf of the corporation, Larsid, it would be appropriate that he also petition for attorney fees after the court renders its final order relating to the resolution of those claims.

Defendant next posits that the amount of the fees awarded was unreasonable, excessive and related not to the recovery of the common fund but rather to the defense of the allegations contained in the counterclaim. Defendant asserts that the trial court should have held an evidentiary hearing as to the reasonableness of the attorney fees requested in the petition. We agree.

"In all cases where an award of attorney fees is appropriate, only those fees which are reasonable will be allowed, the determination of which is left to the sound discretion of the trial court. The party seeking the fees, whether for himself or on behalf of a client, always bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness. An appropriate fee consists of reasonable charges for reasonable services; however, to justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client. The petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor. It is incumbent upon petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated." *Mars v. Priester* (1990), 205 Ill. App. 3d 1060, 1064-65, 563 N.E.2d 977; see also *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 518 N.E.2d 424.

In the instant case, the petition for fees contained an affidavit from the partner primarily responsible for the management of the case on behalf of Lasday which stated the total amount of the fees charged and a blanket assertion of their reasonableness. Attached to that affidavit was a copy of the itemized statement submitted to Lasday for payment. The itemized statement provides a total amount of time expended by an individual for a particular day and a general description of the tasks performed. This statement, however, is not sufficiently detailed with regard to the nature of the actual time expended in each of the legal tasks performed, how they related to the litigation and whether they were necessarily required upon which to base an award of fees. (*Mars v. Priester* (1990), 205 Ill. App. 3d 1060, 563 N.E.2d 977.) The *Kaiser* court held that it is impossible to determine the exact amount of time expended on each individual task when the time for all work performed by an attorney is aggregated into a single hourly total for that day. *Kaiser*, 164 Ill. App. 3d 978, 518 N.E.2d 424.

Accordingly, we believe that the trial court should hold an evidentiary hearing with respect to the reasonableness of the attorney fees requested by Lasday. Specifically, the trial court should ascertain whether or not the specific charges relate to the prosecution of the claims in the original complaint and plaintiff should be awarded only those fees and costs related to the prosecution of that claim. Any fees or costs which related to the representation of Lasday in the asset sale and general corporate work on behalf of Larsid as well as those fees and costs which relate to the defense of Lasday in the counterclaim should not be allowed. A review of the record and specifically the itemized statement provided by counsel reveals that there were in fact fees and costs relating to work performed in defense of the charges in the counterclaim as well as prelitigation representation of Lasday. These fees and costs must be segregated from those which specifically relate to the return of money to the common fund. Wiener should rightfully bear only the burden of those costs which his own breach of fiduciary obligations necessitated. Thus we remand this issue to the trial court for an evidentiary hearing in accordance with the directions contained herein.

■ Lastly, defendant argues that the trial court erred in assessing fees against Wiener personally instead of from the common fund. Defendant posits that attorney fees and costs must be awarded out of the fund unless there is an equitable reason not to do so. Defendant cites *De Fontaine v. Passalino*, 222 Ill. App. 3d 1018, 584 N.E.2d 933, in support of this position. We disagree. As a general rule, attorney fees and costs in such a case should be paid from the common fund. However, under the application of general rules and principles, defendants may personally be required to pay all or part of plaintiff's attorney fees and costs. (*De Fontaine*, 222 Ill. App. 3d at 1038, 584 N.E.2d at 943; *Ross v. 311 North Central Avenue Building Corp.* (1970), 130 Ill. App. 2d 336, 351, 264 N.E.2d 406.) The *Ross* court found the defendants committed fraudulent and oppressive acts thus warranting the assessment of plaintiff's attorney fees and costs against them personally. Likewise, the trial court in the case at bar found that "Wiener's misappropriation of the corporate funds and his continuous refusal to return the funds" to the corporate account warranted that Wiener be personally liable for payment of Lasday's attorney fees and costs. A reviewing court should not vacate an award of attorney fees absent a clear abuse of discretion. (*Lurie v. Canadian Javelin, Ltd.* (1982), 93 Ill. 2d 231, 239, 443 N.E.2d 592.) We do not believe the trial court abused its discretion in this regard.

In light of the foregoing, the judgment of the circuit court of

Cook County is affirmed in part, reversed in part and remanded with directions.

Affirmed in part; reversed in part and remanded with directions.

RIZZI and CERDA, JJ., concur.