FOURTH DIVISION
 FILED: 11/27/96

1-95-4299 & 96-1513 (Consol.)

MID-AMERICAN ELEVATOR COMPANY, INC. ) APPEAL FROM THE
 ) CIRCUIT COURT OF
 Plaintiff and Citation Petitioner- ) COOK COUNTY
 Appellee and Cross-Appellant, )
 v. )
NORCON, INC., ) 
 )
 Defendant, )
 )
(DOUGLAS KAULAS and PATRICIA KAULAS, ) HONORABLE
 ) ALBERT GREEN,
 Citation Respondents-Appellants ) JUDGE PRESIDING.
 and Cross-Appellees.) )
 PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:
 The petitioner, Mid-American Elevator Company, commenced
supplementary proceedings against the respondents, Douglas and
Patricia Kaulas, to discover assets belonging to the judgment
creditor, Norcon, Inc. The court determined that the Kaulases were
unlawfully holding property belonging to Norcon and entered
judgment against them for the unpaid balance of an underlying
judgment against Norcon in favor of Mid-American. The Kaulases now
appeal, raising as issues whether (1) the court relied upon an
inapplicable statute in holding them liable for the remainder of
the judgment against Norcon; (2) the court denied them due process
by entering judgment against them without a trial; and (3) the
court erroneously entered judgment against Patricia Kaulas when
there was no evidence that she was involved in the continuation of
business of Norcon after dissolution. On cross-appeal, Mid-
American argues that the court erred in denying its motion to
recover attorney fees and costs for the citation proceedings.
 Norcon was a closely-held corporation engaged in construction
contracting. At all times relevant, its primary shareholders were
Douglas and Patricia Kaulas, who alternated as its president and
secretary. On March 6, 1991, Norcon was employed as general
contractor for a comprehensive renovation job, and subcontracted
with Mid-American to install a service elevator for the project. 
On November 18, 1991, Mid-American brought suit against Norcon for
breach of this subcontract.
 On September 1, 1994, while Mid-American's suit remained
pending, Norcon was involuntarily dissolved by the Secretary of
State for failing to pay franchise taxes. It is undisputed that
although the corporation was never reinstated, it continued doing
business from the date of dissolution until after the initiation of
the citation proceedings at issue.
 On May 19, 1995, the court in the contract suit entered
judgment in favor of Mid-American and against Norcon in the amount
of $75,930, plus prejudgment interest and costs. When the judgment
remained unpaid on May 25, 1995, Mid-American served the Kaulases,
as Norcon's officers of record, with the citation petition at
issue. See 735 ILCS 5/2-1402 (West 1994). The citation contained
a standard restraining provision, prohibiting the Kaulases from
transferring or disposing of Norcon's property until after the
resolution of the citation proceedings.
 The evidence at the citation proceedings was undisputed. At
a June 2, 1995, hearing, Douglas admitted that Norcon was still in
business and that he was its president and Patricia was its
secretary. Mid-American offered uncontested documentary proof that
from the date of the dissolution through the time of the
proceedings, Norcon maintained an active bank account, paid Douglas
from corporate proceeds, and continued to employ workers and pay
them from a corporate account. Since the dissolution, Norcon had
bid on several projects, two of which it had been awarded and was
currently performing; namely, one for Frederic Lane, dated August
29, 1994, and executed by Frederic Lane on October 3, 1994, and
another for Linda and Benjamin Ruff, dated June 1995.
 The evidence also showed that on June 2, 1995, Douglas
endorsed a $20,474 check, payable to Norcon from Lane, over to
Henry Electric Company, Inc., a subcontractor on the Lane project. 
The check was to settle a Norcon debt to Henry in the amount of
$12,150, and at Douglas's instruction, the $8,324 overpayment was
then returned by Henry in the form of a check made payable to
Patricia Kaulas. Additionally, a check in the amount of $10,000
was issued to Patricia by Henry Electric on June 2, 1995.
 Further, upon receipt of the citation, Douglas began
depositing checks made payable to Norcon into a separate account
designated "Norenco". He deposited into the Norenco account a
check from Lane to Norcon in the amount of $10,485 and a check from
the Ruffs to Norcon totalling $38,550. Douglas also admitted
making disbursements from the Norenco account after June 2, 1995,
to pay Norcon's suppliers and subcontractors.
 In June and July of 1995, checks totalling over $9000 were
drawn on the Norenco account and deposited into a personal account
held by Patricia at the Midtown Bank and Trust Company. Funds from
Patricia's account were then disbursed to pay Norcon's employees
and other creditors. Money was also withdrawn from this account to
cover the Kaulas' personal expenses.
 On August 22, 1995, Mid-American filed motions seeking the
turnover of $11,026.15 held in a Norenco account, and $545.82 held
in a Norcon account, all in partial satisfaction of the unpaid
underlying judgment. The court granted the motion, and also
extended temporary restraining orders previously entered against
the Kaulases precluding them from withdrawing certain funds from
Midtown Bank.
 The Kaulases subsequently filed a motion seeking return of
these funds and to dissolve the temporary restraining orders
entered against them. In support of their motion, the Kaulases
offered the affidavit of Douglas Kaulas, which admitted that Norcon
had continued doing business after the dissolution. Douglas
averred that he received notice of the dissolution but did not
understand its significance. Attached to Douglas's affidavit was
a statement of Norcon's assets as of September 1994, most of which
Douglas still had in his possession. Douglas offered to tender the
assets, which totalled less than $7,792, to the court as Norcon
assets. Douglas averred that accounts receivable existing at the
time of dissolution were paid to suppliers, subcontractors, and
other employees for services rendered on Norcon jobs, and that he
mistakenly disbursed Norcon funds from the Lane and Ruff contracts
to pay creditors. 
 On November 13, 1995, Mid-American moved for the entry of
judgment against the Kaulases, jointly and severally, for the
outstanding balance of the judgment against Norcon. Mid-American
alleged that, as of that date, only $59,233.66 of the judgment had
been satisfied and more than $40,000 remained outstanding. Mid-
American further alleged that Douglas was the beneficial owner of
real estate at 1922 N. Burling and that he had exclusive power of
direction over the land trust having title to the property. Mid-
American requested that the power of direction over the Burling
land trust be turned over to Mid-American or that the property be
sold and the proceeds applied in satisfaction of the judgment
against Norcon.
 On November 14, 1995, the trial court entered judgment against
Douglas and Patricia Kaulas, jointly and severally, in the amount
of $44,045.01. The court found that, notwithstanding the
dissolution, the Kaulases had continued doing business as Norcon
until the citation proceedings, carrying out contracts and
receiving and disbursing funds on behalf of the corporation. The
court denied the Kaulas' motion for a return of the funds turned
over to Mid-American and for a dissolution of the restraining
orders entered against them. It also denied a motion by Mid-
American for attorney fees and costs it incurred in the citation
proceedings. The instant appeal and cross-appeal followed.
 Supplementary proceedings under section 2-1402 of the Code of
Civil Procedure ("Code")(735 ILCS 5/2-1402 (West 1994)) are
designed to assist a judgment creditor in discovering assets of the
judgment debtor in order to satisfy an unpaid judgment. Pyshos v.
Heart-Land Development Co., 258 Ill. App. 3d 618, 622-23, 630
N.E.2d 1054 (1994). The procedure authorizes the creditor to
conduct an examination of a third party (735 ILCS 5/2-1402(a) (West
1994)), and upon a showing that the third party is holding assets
belonging to the judgment debtor, empowers the court to summarily
compel the application of discovered assets or income to the
satisfaction of the judgment, as long as the judgment debtor would
have the right to recover such assets from the third party. 
Pyshos, 258 Ill. App. 3d at 623; Bentley v. Glenn Shipley
Enterprises, Inc., 248 Ill. App. 3d 647, 651, 619 N.E.2d 816
(1993); see also 735 ILCS 5/2-1402(b)(3), (b)(4) (West 1994). The
provisions of section 2-1402 are to be liberally construed, and the
burden lies with the petitioner to show that the citation
respondent possesses assets belonging to the judgment creditor. 
Bentley, 248 Ill. App. 3d at 652. 
 The Kaulases first argue that in holding them liable for the
remainder of the judgment against Norcon, the trial court
erroneously relied upon section 8.65(a)(3) of the Business
Corporation Act of 1983 ("Act")(805 ILCS 5/8.65(a)(3) (West 1994)),
which is inapplicable to the situation at bar. Section 8.65(a)(3)
provides:
 "The directors of a corporation that carries on its
 business after the filing by the Secretary of State of
 articles of dissolution, otherwise than so far as may be
 necessary for the winding up thereof, shall be jointly and
 severally liable to the creditors of such corporation for
 all debts and liabilities of the corporation incurred in so
 carrying on its business." (Emphasis added.) 
 The Kaulases maintain that this section is inapplicable
because, inter alia, it pertains solely to debts and liabilities
incurred after dissolution, and Mid-American's case against Norcon
was initiated on November 18, 1991, almost three years before
Norcon was dissolved. Additionally, the Kaulases assert that the
court wrongly concluded that the money they made from post-
dissolution contracts belonged to Norcon, when Norcon was no longer
in existence. In response, Mid-American argues that because the
Kaulases continued doing business as Norcon in complete disregard
of laws requiring a winding up process and payment of creditors,
they must be held liable for the outstanding judgment against the
corporation. We agree that section 8.65(a)(3) cannot reasonably be
interpreted to impose liability on the Kaulases for the outstanding
judgment against Norcon.
 In construing a statute, a court must give the language its
plain and ordinary meaning. The statute should be read as a whole
and all its material aspects considered together. Trittipo v.
O'Brien, 204 Ill. App. 3d 662, 666, 561 N.E.2d 1201 (1990). The
court must interpret the statute on the basis of what was written
and not search for any subtle or not readily apparent meaning. 
Trittipo, 204 Ill. App. 3d at 666.
 The opening phrase of section 8.65(a)(3) is directed
specifically towards directors of a corporation that "carries on
its business after *** dissolution", and the predicate imposes
liability "for all debts and liabilities *** incurred in so
carrying on its business." (Emphasis added.) The plain meaning of
this language creates liability only for debts incurred during and
as a result of the illicit continuation of business after
dissolution.
 In the case at bar, there is no dispute that Mid-American's
case against Norcon was initiated nearly three years before
Norcon's dissolution. The fact that the judgment was entered after
dissolution is of no consequence, because the judgment was based
exclusively upon the conduct of Norcon prior to dissolution. A
corporation is an entity separate and distinct from its officers,
directors, and shareholders, and the officers, directors and
shareholders generally are not liable for corporate debts or
liabilities. In re Rehabilitation of Centaur Insurance Co., 158
Ill. 2d 165, 172-73, 632 N.E.2d 1015 (1994); McCracken v. Olson
Cos., 149 Ill. App. 3d 104, 109, 500 N.E.2d 487 (1986). In light
of the fact that Norcon's liability to Mid-American was incurred
prior to dissolution, the court erred in holding the Kaulases
liable for the judgment against Norcon.
 Mid-American also refers us to section 3.20 of the Act, which
is similarly unavailing. That section states:
 "All persons who assume to exercise corporate powers
 without authority so to do shall be jointly and severally
 liable for all debts and liabilities incurred or arising as
 a result thereof." 805 ILCS 5/3.20 (West 1994).
 This section by its plain language pertains to debts or liabilities
incurred or arising as a result of the illicit continuation of
business. Again, the conduct giving rise to the judgment at issue
occurred long before Norcon's dissolution, and was not the result
of the fact that the Kaulases wrongfully continued doing business
as Norcon, Inc., thereafter.
 However, to the extent the Kaulases retained or disposed of
Norcon assets after dissolution, they are responsible for a full
accounting. Dissolution effects neither a transfer of title to
corporate assets (805 ILCS 5/12.30(c)(1) (West 1994); In re Lipuma,
167 B.R. 522 (N.D. Ill. 1994)), nor an abatement of pending civil
claims against the corporation. 805 ILCS 5/12.30(c)(5) (West
1994). A corporation must adhere to all corporate formalities
during the winding up process; shareholders are entitled to the
residue of corporate funds only after providing for the rights of
corporate creditors and the legal claims of third persons. Lasday
v. Weiner, 273 Ill. App. 3d 461, 466, 652 N.E.2d 1198 (1995);
Snyder v. Nathan, 353 F. 2d 3 (7th Cir. 1965).
 A shareholder may not treat corporate assets as his own prior
to completion of the winding up process (Lasday, 273 Ill. App. 3d
at 466), and a corporate officer cannot serve himself first by
manipulating corporate affairs to the detriment of creditors. 
O'Connell v. Pharmaco, Inc., 143 Ill. App. 3d 1061, 1070-71, 493
N.E.2d 1175 (1986); see also Dean v. Kellogg, 327 Ill. App. 520,
526, 64 N.E.2d 551 (1946), aff'd, 394 Ill. 495, 68 N.E.2d 898. In
any transaction in which an officer acquires corporate property,
the burden of proof lies with him to establish that the transaction
was fair. O'Connell, 143 Ill. App. 3d at 1070. Further, a
majority stockholder who, after dissolution, converts corporate
property and assets to his own use, becomes an equitable trustee of
that property for the benefit of corporate creditors. Blankenship
v. Demmler Manufacturing Co., 89 Ill. App. 3d 569, 572, 411 N.E.2d
1153 (1980); see also Dean, 327 Ill. App. at 526; 16A W. Fletcher,
Cyclopedia Corporations 8130, at 258 (1991-95). 
 In this case, there is no question that Norcon's assets as of
September 1, 1994, should have been set aside for the benefit of
Norcon's creditors, including Mid-American. However, the record in
this case is insufficient for this court to ascertain the value of
Norcon's property on that date; thus, remand is necessary. Douglas
admitted in his affidavit that upon dissolution, he retained Norcon
property in the amount of $7,792. This amount unquestionably must
be held in trust for the benefit of Mid-American and Norcon's other
creditors.
 A determination must be made as to whether the Lane contract
belonged to Norcon or the Kaulases. A copy of the contract in the
record dated August 29, 1994, was not executed by Frederic Lane
until October 3, 1994; however, the contract also indicates that
work was to begin on August 29, 1994. On remand, the court should
determine whether the Lane contract commenced before or after
dissolution. Any funds or assets found to belong to Norcon that
were used for the Kaulas' benefit must be disgorged and placed in
trust for Norcon's creditors. In view of our decision on this
issue, we do not reach the Kaulas' other arguments for reversal,
that the court denied them due process, and that it erred in
entering judgment against Patricia Kaulas. 
 On cross-appeal, Mid-American challenges the court's denial of
its petition for attorney fees and costs.
 After granting its motion for turnover, the court gave Mid-
American leave to file a petition for attorney fees and costs. In
this petition, Mid-American sought compensation for the substantial
expense it allegedly incurred in fighting the Kaulas'
"contemptuous" violations of the citation lien and the restrictions
against transfer of Norcon property. Mid-American claimed that the
Kaulases repeatedly sought to conceal Norcon's property by
diverting funds into the Norenco and Patricia Kaulas checking
accounts, and then disbursing money out of Patricia's account to
pay subcontractors on the Lane and Ruff projects and to cover
personal expenses. Mid-American further asserted that Douglas
testified untruthfully at the citation proceedings, stating that
Norcon had no employees, and attempting to mislead Mid-American's
counsel regarding the whereabouts and availability of documents
responsive to the citation. Mid-American requested reasonable
attorney fees in the amount of $24,520, plus expenses totalling
$3,098.25, incurred in prosecuting the citation proceedings. The
trial court awarded it costs in the amount of $2,346.20, but
otherwise denied the petition.
 Mid-American now argues that the court erred in refusing to
find the Kaulases in contempt either under section 2-1402(d)(1) or,
alternatively, under the court's inherent power.
 Section 2-1402(d)(1) authorizes a court to "punish any party
who violates the restraining provision of a citation as and for a
contempt, or if the party is a third party[, to] enter judgment
against him or her in the amount of the unpaid portion of the
judgment and costs allowable under this section***." 735 ILCS 5/2-
1402(d)(1) (West 1994). Apart from this section, judges have
inherent discretion to punish contemptuous behavior, and they are
not strictly bound in this regard by the Code (735 ILCS 5/1-101 et
seq. (West 1995)). See, e.g., Welch v. City of Evanston, 181 Ill.
App. 3d 49, 56, 536 N.E.2d 866 (1989); Comet Casualty Co. v.
Schneider, 98 Ill. App. 3d 786, 793, 424 N.E.2d 911 (1981). The
court may properly assess attorney fees as a sanction as long as
the fees have been proven reasonable through detailed records. 
Welch, 181 Ill. App. 3d at 56; see also Frank B. Hall & Co. v.
Payseur, 99 Ill. App. 3d 857, 860, 425 N.E.2d 1002 (1981); Comet,
98 Ill. App. 3d at 793 (an appropriate sanction is fees covering
the cost of the contempt proceeding).
 However, the determination to enter a contempt finding is a
matter of discretion with the trial court that cannot be disturbed
on review absent an abuse of that discretion. Frank B. Hall, 99
Ill. App. 3d at 860. Further, the supreme court has restricted the
propriety of a contempt finding under 2-1402(d)(1) against third
parties who dispose of property of the judgment debtor in good
faith, though erroneously. Specifically, in interpreting that
portion of section 2-1402(d)(1) quoted above, the court stated the
following:
 "It would appear, however, that the appropriate punishment
 for a third-party respondent in a citation proceeding who
 has a color of a legitimate claim to the property and
 disposes of the property in violation of the prohibition of
 the citation, and the claim later proves not to be valid,
 would be by way of the judgment remedy provided." 
 Bank of Aspen v. Fox Cartage, Inc., 126 Ill. 2d 307, 320, 533
N.E.2d 1080 (1989), citing 735 ILCS 5/2-1402(d)(1) (West 1994).
 In this case, the court declined to make a finding of contempt
against the Kaulases, apparently concluding that Mid-American's
proof was conclusory and otherwise insufficient, and that the
Kaulases were entitled to a hearing before such a finding. The
court also apparently found that, although Douglas violated the
restriction against the transfer of Norcon's assets, "he did not do
it with malice aforethought."
 However, it is impossible to verify this fact, or to ascertain
whether the court abused its discretion in refusing to find the
Kaulases in contempt, because Mid-American has failed to include
the transcript of the fee hearing in the record on appeal. The
judge may have determined under Aspen that the Kaulases, as third
parties in this case, appropriated Norcon's property believing they
had a right to do so. 
 In any event, the award of sanctions lies within the
discretion of the trial court, and there is no basis to conclude
that the court abused its discretion in this case. 
 Mid-American also argues that it should be awarded its costs
on appeal. It has failed to cite relevant authority on this point,
and in any event, an award of costs would be inappropriate in light
of our determination above. Thus, Mid-American's request must
fail. 
 For the foregoing reasons, the judgment of the circuit court
denying Mid-American's request for attorney fees is affirmed. The
judgment against the Kaulases on the citation petition is reversed,
and this case is remanded for proceedings consistent with this
opinion.
 Affirmed in part, reversed in part and remanded.
 CAHILL and O'BRIEN, JJ., concur.