In re Radha Ramana Murty NARUMANCHI Radha Bhavatarini Dev Narumanchi, Debtors.

**GULF INSURANCE GROUP and Gulf Insurance Company, Plaintiffs,**

v.

**Radha Ramana Murty NARUMANCHI, Radha Bhavatarini Dev Narumanchi, Defendants.**

**Radha Ramana Murty NARUMANCHI, Radha Bhavatarini Dev Narumanchi, Third–Party Plaintiffs,**

v.

**Steven V. BUCKMAN, Oklahoma Tax Commission, Public Service Company of Oklahoma, et al., Third–Party Defendants.**

Bankruptcy No. 97–31791.
Adversary No. 97–3168.

United States Bankruptcy Court,
D. Connecticut.

May 11, 1998.

Radha Ramana Murty Narumanchi, Bhavatarini Dev Narumanchi, New Haven, CT, Third–Party Plaintiffs Pro se.

Carl T. Gulliver, Coan, Lewendon, Royston, Deming & Gulliver, New Haven, CT, for Third–Party Defendant, Public Service Company of Oklahoma.

John A. Grissom, Jr., Oklahoma Tax Commission, Oklahoma City, OK, for Third–Party Defendant, Oklahoma Tax Commission.

Jeffrey Vita, Saxe, Eustace & Vita, New Haven, CT, for Third–Party Defendant, Steven V. Buckman.

### MEMORANDUM OF DECISION ON MOTIONS TO DISMISS THIRD–PARTY COMPLAINT

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

Before the Court are three motions to dismiss the Third–Party Complaint in this adversary proceeding. These motions are premised on a number of legal theories. However, the Court need not reach those questions because the third-party complaint at issue is simply beyond the proper scope of third-party process under Fed.R.Civ.P. 14(a), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7014.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant contested matters by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine these matters on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). These are "core proceedings" pursuant to 28 U.S.C. § 157(b)(2)(I).

## III. BACKGROUND AND PROCEDURAL POSTURE

### A. Relationship of the Parties.

It is undisputed that at all times relevant hereto, Radha Ramana Murty Narumanchi

and Radha Bhavatarini Dev Narumanchi (collectively, the "Narumanchis")—the Debtors, Defendants, and Third–Party Plaintiffs herein—were directors and shareholders .of Lata. Enterprises Limited ("Lata"), an Illinois corporation. Lata owned and operated the Camelot Hotel (the "Camelot") located in Tulsa, Oklahoma from approximately March 1991 through November 1992. Lata was voluntarily dissolved on or about June 6, 1995.

The Plaintiffs—Gulf Insurance Group and Gulf Insurance Company (collectively, "Gulf")—provided three payment bonds (the "Bond(s)") on behalf of Lata in favor of (i) the Oklahoma Tax Commission ("OTC"), (ii) the Public Service Company of Oklahoma ("PSO")—the Camelot's electricity supplier, and (iii) the City of Tulsa Department of Public Works (the "City of Tulsa")—the Camelot's refuse hauler (collectively, the "Bond Beneficiaries").

### B. The Oklahoma Judgment.

Between December 1992 and March 1995, Gulf paid certain sums to the Bond Beneficiaries pursuant to the Bonds. Gulf, by and through its attorney, Steven V. Buckman ("Buckman"), then commenced a civil action in the District Court of Tulsa County, State of Oklahoma (the "Oklahoma Court"), seeking a monetary judgment against the Narumanchis and Lata for, *inter alia*, the sums Gulf had paid to the Bond Beneficiaries. It is Gulf's contention that by virtue of the Narumanchis' execution of a General Agreement of Indemnity (the "Indemnity") they became individually liable to Gulf for, *inter alia*, all amounts paid by Gulf to the Bond Beneficiaries pursuant to the Bonds. On July 26, 1996, Gulf obtained a default judgment against the Narumanchis in the Oklahoma Court for the sum of $51,958.46 (the "Judgment Debt").[1]

### C. The Dischargeability Action.

After Gulf attempted to collect the Judgment Debt, the Narumanchis commenced the underlying Chapter 7 bankruptcy case in this Court on May 2, 1997.. Thereafter, Gulf initiated the pending litigation through the filing

in this Court of a Complaint (the "Complaint") which sought, *inter alia*, (i) a determination that the Judgment Debt was not dischargeable in the Narumanchis' bankruptcy case and (ii) a monetary judgment for the amount of the Judgment Debt. By Order entered earlier this same date, May 11, 1998 (the "Abstention Order"), this Court abstained from entertaining so much of the Complaint as sought a monetary judgment against the Narumanchis.

### D. The Third–Party Complaint.

The Narumanchis responded to the Complaint by, *inter alia*, filing a third-party complaint (the "Third–Party Complaint") (Doc. I.D. No. 12–2) against five (5) third-party defendants. These third-party defendants are logically divided into two groups involving similar claims, as follows:

### 1. Gulfs Agents:

***a. Broken Arrow Insurance Agency, Inc. ("Broken Arrow").*** The Narumanchis request that this Court "find and declare" that Broken Arrow engaged in "intentional misrepresentation, common law fraud, and deceit" in connection with, *inter alia*, the Narumanchi's execution of the Indemnity. They also seek to have this Court find Broken Arrow "criminally guilty" of "obtaining a false notarization" of the signatures of the Narumanchis on the Indemnity. On the basis of these findings, the Narumanchis pray that this Court award them "compensatory, special and punitive damages" against Broken Arrow. Broken Arrow has answered, but not moved to dismiss, the Third–Party Complaint.

***b. Buckman.*** The Narumanchis request that this Court "find and declare" that Buckman is "guilty of subornation of perjury in requiring Gulf's employee, Debbie Ewing, to make a false representation of fact in ... [an] affidavit" utilized by Gulf and Buckman in obtaining the default Oklahoma Judgment. The Narumanchis state that such conduct caused them "monetary, physical [and] emotional distress", entitling them to "compensa-

---

1. For purpose of this Memorandum of Decision, the "Oklahoma Judgment" includes a separate

judgment for attorneys' fees and costs ($3,794.00) dated September 3, 1996.

tory, special and punitive damages" against Buckman.

Buckman has responded to the Third–Party Complaint with a motion to dismiss which is the subject, in part, of this Memorandum of Decision. Buckman seeks dismissal of the Third–Party–Complaint on the alleged bases of the Narumanchis' lack of standing,[2] and this Court's lack of subject matter jurisdiction.[3]

## 2. Bond Beneficiaries.

***a. OTC.*** The Narumanchis request that this Court "find and declare" that certain tax assessments and tax warrants issued against them and Lata by OTC were "arbitrary, capricious, highhanded and illegal". Consequently, they seek a declaration that Gulf is "entitled to a complete and full refund of the amount collected from it by OTC".

OTC has responded to the Third–Party Complaint with a motion to dismiss which is the subject, in part, of this Memorandum of Decision. OTC seeks dismissal of the Third–

Party Complaint on the basis of sovereign immunity.[4]

***b. PSO.*** The Narumanchis request that this Court "find and declare" that PSO "overbilled" Lata for electrical service at the Camelot, and that PSO "reneged" on the terms of an alleged agreement with Lata regarding payment. The Narumanchis claim that as shareholders of Lata, they have "suffered economic, financial, emotional, and physical damages" as a result of the actions of PSO, and are entitled to collect "compensatory, special and punitive damages" against PSO.

PSO has responded to the Third–Party Complaint with a motion to dismiss which is the subject, in part, of this Memorandum of Decision. PSO seeks dismissal of the Third–Party Complaint on the bases of laches,[5] expiration of the applicable statute of limitations,[6] lack of standing,[7] and lack of subject matter jurisdiction.[8]

***c. City of Tulsa.*** The Narumanchis sought to have this Court "find and declare" that the City of Tulsa overbilled Lata, then admitted the overbilling, but failed to credit

---

**2.** As noted by Buckman, the Narumanchis' claims against him are, in the first instance, property of their bankruptcy estate, and that the Chapter 7 trustee—Michael J. Daly (the "Trustee")—as the estate's statutory representative and fiduciary, has the exclusive right to prosecute such claims unless and until this Court permits another to prosecute in his stead. While a debtor's exemption interest in a legal claim may otherwise constitute an interest of a nature and weight sufficient to confer standing on a litigant, in the context of bankruptcy Congress has legislated in a manner which precludes debtor standing in favor of the exclusive standing of the Trustee, so long as the subject claim remains property of the bankruptcy estate.

**3.** This Court does not lack subject matter jurisdiction over the Third–Party Complaint, so long as the claims constituting that complaint remain property of the Narumanchis' bankruptcy estate. An assessment of the Court's subject matter jurisdiction over those claims following an abandonment of the same by the Trustee is premature.

**4.** While this Court's ultimate method of resolution of the instant motions serves the prudential goal of avoiding non-essential constitutional questions, *see Harmon v. Brucker*, 355 U.S. 579, 581, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958), the Court observes that the Narumanchis appear to seek in this Court only declaratory relief against OTC—a prayer which may not implicate Oklahoma's sovereign immunity as provided by the

11th Amendment to the United States Constitution.

**5.** The Court expresses no opinion on this issue at this time.

**6.** The Court expresses no opinion on this issue at this time.

**7.** *See* fn. 2 regarding the Narumanchis' standing vis-a-vis the Trustee. As to their standing vis-a-vis Lata, the Court agrees with PSO that the facts alleged in the Third–Party Complaint establish a claim, if any, belonging to PSO's customer, Lata. The Narumanchis assert that the corporate dissolution of Lata effected a transfer of Lata's claims to the shareholders of Lata by operation of Illinois law. However, under Illinois law, dissolution does not, in and of itself, effect a transfer of corporate assets to shareholders. *See* 805 ILCS 5/12.30(c)(1). Shareholders may receive corporate property after dissolution, but only after all corporate debts are paid in a statutory "wind up". *See, e.g., Lasday v. Weiner*, 273 Ill.App.3d 461, 210 Ill.Dec. 222, 225, 652 N.E.2d 1198, 1201 (1995); *Shute v. Chambers*, 142 Ill.App.3d 948, 97 Ill.Dec. 92, 95–96, 492 N.E.2d 528, 531–32 (1986); *see also* 805 ILCS 5/12.30(a). The Narumanchis have not alleged any "wind up" of the corporate affairs of Lata.

**8.** *See* fn. 3.

Lata for the overbilled amount, resulting in an inflated claim against the Bond. The remedy sought was a declaration that the City of Tulsa "owes to Gulf" the overbilled amount.

The Narumanchis are no longer prosecuting the Third–Party Complaint against the City of Tulsa, having withdrawn the same on December 5, 1997 (Doc. I.D. No. 48).

## IV. ANALYSIS

### A. The Limits of Third–Party Practice.

Rule 14 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7014, provides in relevant part as follows:

> (a) *When Defendant May Bring in Third Party.* At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.* . . .

Fed.R.Civ.P. 14(a) (1997) (emphasis supplied).

In light of this Court's Abstention Order, Gulf's only substantive "claim" in this Court is a request for a determination of non-dischargeability as to the Oklahoma Judgment (the "Dischargeability Claim"). Thus, under a plain reading of Rule 14, third-party practice—otherwise known as "impleader"—is available to the Narumanchis if, and only if, the entities they seek to implead are, or may be, "liable" to the Narumanchis for "all or part of" Gulf's Dischargeability Claim. In other words, there must be a nexus of liability between the Narumanchis' third-party claims and Gulf's *Dischargeability* Claim— not its *monetary* claim. That nexus is absent here.[9]

### B. Nature of Gulf's Dischargeability Claim.

In order to pass on the appropriateness of the Third–Party Complaint, this Court must scrutinize the grounds for non-dischargeability alleged by Gulf, in order to determine if the Third–Party Complaint seeks to hold the Third–Party Defendants liable for "all or part of" the *Dischargeability Claim*. Apropos of that task, the Court must analyze the two statutory bases alleged by Gulf for its claim of non-dischargeability, to wit:

#### 1. Bankruptcy Code Section 523(a)(2)(B).

■ Gulf contends that the Narumanchis obtained Gulf's bonding "services" through the use of an "intentionally misleading statement of financial condition" as described by Code Section 523(a)(2)(B). Yet none of the allegations of the Third–Party Complaint against Buckman, PSO, or OTC even begin to state a claim under which any of those parties might be liable for the putative *non-dischargeability* of the Oklahoma Judgment resulting from the use of an intentionally misleading financial statement.

Assuming that impleader is ever appropriate in dischargeability litigation, one could construct a scenario under which a party might be secondarily liable to the Narumanchis in connection with a judgment of non-dischargeability for the use of a false financial statement. For example, if the Narumanchis alleged that another entity compelled them to provide false financial statements, then they might state an appropriate third-party claim—one on which the third-party defendant could be contingently liable to the Narumanchis should Gulf collect any portion of the Oklahoma Judgment from the Narumanchis after a determination of non-dischargeability. Nothing even remotely resembling this hypothetical third-party claim has been pled by the Narumanchis against Buckman, PSO, or OTC in this adversary proceeding.

---

9. Indeed the Court questions whether an entity could ever be secondarily liable to a bankruptcy debtor in connection with a determination of the dischargeability of a debt, given that pure dischargeability actions are declaratory in nature. *Cf., e.g., United States Fire Insurance Co. v. Read-*

*ing Municipal Airport Authority,* 130 F.R.D. 38, 39 (E.D.Pa.1990). A judgment of non-dischargeability does not in itself establish monetary liability; it acts only to preserve monetary liability established by other claim(s).

**2. Bankruptcy Code Sections 523(a)(1) and/or (7).**

 Gulf also alleges that the Oklahoma Judgment is not dischargeable because it constitutes a "tax" as described in Code Section 523(a)(1)(A), (C), or a governmental "fine" or "penalty" as described in Section 523(a)(7). Since Gulf is not itself a taxing authority or other governmental unit, presumably this claim is premised on a theory of subrogation to OTC as to that portion of the Oklahoma Judgment represented by Gulfs payment of OTC pursuant to its Bond.

Construed liberally in favor of the Narumanchis, their Third–Party Complaint might be read to seek a declaratory judgment against OTC to the effect that the sums paid by Gulf to OTC were not in payment of any *valid* "tax", "fine" or "penalty" within the meaning of Sections 523(a)(1) and/or (7), and thus Gulf would have no valid "tax", " fine" or "penalty" status to which to subrogate. Nonetheless, even if that is the nature of the Narumanchis' "claim", impleader is inappropriate since there are no circumstances under which OTC could be *liable* to the Narumanchis for a judgment declaring Gulfs Oklahoma Judgment non-dischargeable. As asserted against OTC, the Narumanchis' "claim" is really a "defense" to Gulfs Dischargeability Claim. Because Gulf is proceeding by way of subrogation to the rights and status of OTC, it is unnecessary that OTC be a third-party defendant to enable the Narumanchis to assert a defense challenging the validity or non-tax status of the OTC Bond claim. Further, the Narumanchis will not be prejudiced by the dismissal of their third-party claim against OTC since OTC may be required to respond to discovery requests, and/or provide trial testimony through its representative(s).

 Although Rule 14 should be liberally construed so as to (i) save the time and expense of duplication of evidence, (ii) obtain consistent results from similar evidence, and (iii) avoid any handicap a defendant may suffer between the time of entry of a judgment against him and the time of entry of one in his favor against one secondarily liable, *see Dery v. Wyer*, 265 F.2d 804, 806–07 (2d Cir.1959), impleader practice cannot be used as a means to combine all controversies having a common factual thread. *See, e.g., Forum Insurance Co. v. Ranger Insurance Co.*, 711 F.Supp. 909, 915 (N.D.Ill.1989). That principle is particularly true when this Court exercises its limited and specialized subject matter jurisdiction to hear and determine an objection to the dischargeability of a debt.

## IV. CONCLUSION

In the exercise of this Court's discretion, upon the motions of Third–Party Defendants Buckman, PSO and OTC, and *sua sponte* pursuant to 11 U.S.C. § 105(a), *inter alia*, this Court will dismiss by separate orders the Third–Party Complaint as against Buckman, PSO and OTC.