373 F.2d 644
 Mary Rickman JONES, individually and as a stockholder of
Uris Sales Corporation, suing on behalf of herself
and all other stockholders of Uris Sales
Corporation, Plaintiff-Appellee,
v.
URIS SALES CORPORATION and Morton Penn, Defendants-Appellants.
 No. 255, Docket 30825.
 United States Court of Appeals Second Circuit.
 Argued Jan. 4, 1967.
Decided March 2, 1967.
 
 Michael R. Kleinerman, New York City (Booth, Lipton & Lipton, New York City) (Harold L. Lipton, Arnold I. Biegen and Jeffrey L. Zivyak, new York City, of counsel), for defendants-appellants.
 W. Bernard Richland, New York City (O'Dwyer & Bernstein, New York City) (Leon Hershbaum, of Counsel), for plaintiff-appellee.
 Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 Mary R. Jones, a citizen of North Carolina who owns 50% of the stock of Uris Sales Corporation, a New York corporation, brought this derivative action in the District Court for the Southern District of New York against the corporation and Morton Penn, a citizen of New York, who is its president a director and owner of the other 50% of the stock, and who managed and dominated the corporation. Uris Sales Corporation was engaged in supplying merchandise to post exchanges of the armed forces in the United States and abroad. The thrust of the complaint was that Penn had diverted plaintiff's investment and other corporate assets to his own use and had competed with Uris Sales in dealing with post exchanges.
 
 
 2
 Plaintiff served a notice pursuant to F.R.Civ.P. 30(a) that she would take the deposition of Penn and of the corporation through him on November 12, 1963. Several sessions were had, but neither Penn nor his attorney appeared at one scheduled for January 27, 1964. Plaintiff thereupon moved under F.R.Civ.P. 37(d) for an order striking the answers, entering judgment and punishing Penn for contempt; upon a representation of counsel that defendants 'remain ready, willing and able to appear for a continuation of the depositions and the furnishing of any additional information' immediately upon Penn's return from Europe, Judge Wyatt granted plaintiff's motion unless the defendants appeared on April 2, 1964, 'and then and there submit themselves to pre-trial deposition by the plaintiff and continue thereafter from day to day until such pre-trial deposition is fully concluded.' After various occasions on which Penn appeared, but without bringing any books or records,[1] plaintiff served a subpoena duces tecum requiring Penn to produce at a session on July 21 various documents including copies of his income tax returns and of his correspondence with plaintiff from 1957 to date; all records evidencing loans from Penn to Uris Sales; records of all bank deposits by Penn in his own name, on his behalf or for his use from 1957 to date; all records, including bank deposits and deposit slips, of all monies received by Penn from plaintiff, International Sales Service Co. (the company to which Penn allegedly had diverted defendant corporation's business), the defendant corporation and others; and all records of monies, including cancelled checks, paid or advanced to International, the defendant corporation, plaintiff and others.
 
 
 3
 On July 20 defendants moved to quash the subpoena; plaintiff countered on August 3 with a motion to strike the answers because of Penn's failure to appear on July 21 as required by Judge Wyatt's order. Both motions were denied on September 21 by Judge MacMahon who directed, however, that Penn appear within ten days and thereafter until his examination was completed, and that if he wilfully failed to do this, plaintiff should have judgment by default under F.R.Civ.P. 37(d). Penn appeared on September 30 without a single record, claiming he had been unable to find any; he said, however, that he was still searching and that his efforts as to two of the required items had been hindered by his bookkeeper's absence on vacation. At an adjourned hearing on October 21 Penn again failed to produce copies of the income tax returns or the correspondence, which he insisted he had been unable to locate, of cancelled checks evidencing loans by him to Uris Sales Corporation, or any record of bank deposits, including deposit slips of monies received from International, Uris, plaintiff or various others, although he admitted he had seen some such slips on the bookkeeper's desk. His excuse for not bringing these was that he thought plaintiff's counsel did not want anything less than the complete record; he admitted not having inquired as to this even from his own attorney.
 
 
 4
 Counsel and the reporter then repaired to Judge MacMahon's chambers, where plaintiff's attorney orally moved to strike the answer and give 'the relief he is entitled to.' After hearing counsel argue and the reporter read his notes of that day's depositions, the judge announced he would give Penn 'twenty-four hours in which to comply, twenty-four hours, and any more of this nonsense and I will grant appropriate relief,' specifically the appointment of a special master to preside over the taking of the depositions at Penn's expense. He asked Penn's counsel, 'Is that clear?' Counsel replied that it was, adding he would insist that Penn go back to his office 'and get whatever he has got.' The judge concluded by directing that Penn appear the following morning and 'produce all of the documents called for in that subpoena.'
 
 
 5
 When Penn appeared on October 22, he agreed to sign an authorization enabling plaintiff to obtain copies of his tax returns from the federal and state tax authorities which he had previously declined to do except by express court order, and he produced some cancelled checks and deposit slips allegedly evidencing some of Penn's loans to Uris, 44 files of business correspondence and a single letter from the plaintiff written in 1951, alleging inability to find 15 to 20 later ones. However, he produced nothing in the way of deposit slips or bank records of deposits in his own name or for his use, although he professed willingness to bring bank statements at some future time and explained his failure to produce them then on the basis that he wanted first to find out if they were suitable, although again he had not even asked his own counsel. On this being reported in a further appearance in chambers, Judge MacMahon granted plaintiff's motion to strike the answer. On November 12 he signed an order finding Penn in contempt, fining him $500, striking his answer, granting judgment by default, and appointing a special master to determine and assess the damages. Penn sought to appeal the order to this court which dismissed the appeal for lack of jurisdiction, as it quite obviously had to do. On March 30, 1966, after holding 10 hearings, the master recommended that judgment be entered directing Penn to pay Uris Sales Corporation $72,981.93, with interest of $23,607.24, a total of $96,589.17, and to pay plaintiff $20,000 for counsel fees. The court confirmed the report, and further required Penn to pay $7,500 for the fee of the master and plaintiff's costs and disbursements, computed by the clerk at $1,726.98.
 
 
 6
 On appeal Penn makes three claims, first, that the striking of the answer and entry of the default judgment were unwarranted; second, that the judge erred in various respects in confirming the special master's determination of damages; and, third, that there was no basis for making him individually liable for the fees of plaintiff's attorneys. We shall deal in this opinion only with the first and third claims, since as to the second we can add nothing significant to the discussion by the district judge with which we agree.
 
 
 7
 Penn's major contention as to the impermissibility of striking his answer runs as follows: There was no basis for such an order under Rule 37(d) since he did not fail 'to appear before the officer who is to take his deposition.' And there was likewise no basis for doing this under Rule 37(b)(2)(iii), since he had not refused 'to obey an order made under subdivision (a)' of Rule 37 'requiring him to answer designated questions, or an order made under Rule 34 to produce any document or other thing for inspection * * *' Although Mrs. Jones could have moved initially under Rule 34, she chose instead to proceed under Rule 30, and later by subpoena duces tecum under Rule 45(b). Hence Penn's only default was failure to comply with the subpoena, and while this may have been a contempt, Rule 45(f) unlike Rule 37 does not authorize the striking of a pleading.
 
 
 8
 Although we are by no means sure we would agree with the proposition that a pleading may not be struck for contumacious failure of a party to comply with a subpoena duces tecum issued pursuant to Rule 45(d), see Sperandeo for and on Behalf of N.L.R.B. v. Milk Drivers and Dairy Employees Local No. 537, 334 F.2d 381, 385 (10 Cir. 1964); 5 Moore, Federal Practice P45.11 (2d ed. 1964), we find it unnecessary to decide this. The proceedings in Judge MacMahon's chambers on October 21 can properly be regarded as including an oral motion and order under Rule 34 for the production of the papers designated in the subpoena, and those on October 22 as including an oral motion and order under Rule 37(b) determining Penn's recalcitrance. Even if we assume that these proceedings, even though stenographically reported, were not within the exception to the requirement of written motions for those 'made during a hearing or trial,' F.R.Civ.P. 7(b)(1), see 4 Moore, supra, P34.07 at 2442; 1A Barron and Holtzoff, Federal Practice and Procedure, 244 at 19 (1960 Wright ed.); Shapiro v. Freeman, 38 F.R.D. 308, 309 n. 1 (S.D.N.Y.1965), and that any objection on this score was not waived, Penn suffered no prejudice from the informality. At the October 21 hearing plaintiff made a sufficient showing both of the 'good cause' and of the reasonable probability that the documents constitute or contain evidence which Rule 34 requires, Penn had an opportunity to respond, and the proceedings thoroughly informed Penn's counsel what Penn had to do the following day. When Penn appeared with no deposit slips and without even the bank statements which he conceded were available, making the lame excuse that he wasn't sure plaintiff's attorney would want them although he had not bothered to inquire, he took the risk that judicial lightning might strike. Contempt and a striking of the answer had long been in the background; Penn could not safely assume that the only consequence of contumacy would be the sanction the judge had outlined the previous day.
 
 
 9
 We would not be understood by this to be inviting or encouraging parties to proceed in this manner; it would have been better practice for plaintiff, after the episode on October 21, to have made a written motion under Rule 34 and to have followed this by another on October 22. But the circumstances here were particularly flagrant. Nearly a year had been consumed in discovery, with constant evasions and objections and three previous rulings by district judges; yet the essential documents listed in the subpoena, some of which were admitted to be available, were still unproduced. We are confident for the reasons stated that Penn suffered no prejudice from the absence of written motions; moreover, in the three-week interval between the oral direction that the answer be stricken and the entry of default judgment, he made no effort to cure his default.
 
 
 10
 Independent Productions Corp. v. Loew's, Inc., 283 F.2d 730 (2 Cir. 1960), on which Penn relies, does not assist him; we there held that the party whose pleading had been stricken had complied with the court's order and that the court had not followed the procedure specified in Rule 37. Here, the court did follow the requisite procedures, if rather informally, but Penn did not comply. Appellant's other arguments as to the striking of the answer do not require discussion.
 
 
 11
 On the other hand, we do find difficulty with the portion of the damage award which directs that Penn, rather than the defendant corporation, pay the fees of plaintiff's attorneys. Mrs. Jones' large ownership in the corporation and the direct impact of some of Penn's conduct upon her investment appear to have misled the special master and the district judge into forgetting the reason for the award of such fees in a stockholder's derivative suit-- that the plaintiff's efforts have conferred on the corporation a benefit for which the corporation would otherwise have had to pay itself. See Ballantine, Corporations 156 at 369 (rev. ed. 1946); 2 Hornstein, Corporate Law and Practice 732 at 250 (1959). A defendant adjudged liable in such a suit stands no differently, as regards his obligation to pay his adversary's legal expense, than one in any other litigation; there is no more reason for his having to pay the attorneys' fees of an adverse party when a stockholder sues in the corporation's behalf than when the corporation does this itself. This conclusion follows whether decision on this issue is governed by 626(e) of the New York Business Corporation Law, McKinney's Consol.Laws, c. 4 as the parties have assumed, cf. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 555-556, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Pan American World Airways, Inc. v. Ramos, 357 F.2d 341 (1 Cir. 1966), or by federal procedural law.
 
 
 12
 The judgment is modified so that the $20,000 fee to plaintiff's attorneys shall be payable out of the award to Uris Sales Corporation, and not by Penn individually in addition to such award, and as so modified is affirmed. Mrs. Jones may recover from Penn two-thirds of her costs on appeal.
 
 
 
 [1]
 In one instance plaintiff found it necessary to go before Judge McGohey for a ruling that Penn should answer obvioulsy proper questions