[No. B159413. Second Dist., Div. Seven. Aug. 20, 2003.]

IMRE CZIRAKI, Plaintiff and Appellant, v.
THUNDER CATS, INC., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION.*]**

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

554

**COUNSEL**

Westrup, Click & Associates, R. Duane Westrup, Lawrence R. Cagney and Mark L. Van Buskirk for Plaintiff and Appellant.

Thompson & King and Wayne T. King for Defendant and Respondent.

**OPINION**

**JOHNSON, Acting P. J.**—A successful plaintiff in a minority shareholder's derivative action appeals the trial court's denial of his motion for attorney fees. He contends the court's judgment created a common fund and substantial benefit for defendant corporation, and thus the court should have awarded him fees. The trial court did not believe it could apply the common fund or substantial benefit doctrine in a derivative suit involving a close corporation with a small number of shareholders. The corporation argues the trial court was correct on that issue and even if it erred in refusing to apply these equitable doctrines, the court properly denied the motion because plaintiff failed to present competent evidence enabling the court to determine the amount of a reasonable fee award.

We conclude the trial court erred in failing to apply the common fund and substantial benefit doctrines. In an unpublished portion of the opinion, however, we find appellant's counsel failed to produce sufficient evidence as to the amount of the fees properly attributable to the successful derivative claim as opposed to his individual causes of action. Accordingly, we

reverse the order as it pertains to the application of the common fund and substantial benefit doctrines and remand the matter for a determination of a reasonable attorney fees award.

### FACTS AND PROCEEDINGS BELOW

In September 1995, Imre Cziraki (appellant), Lawrence R. Phillis, and Eugene W. Van Den Berg II held the first incorporators and board of directors meeting of Thunder Cats, Inc. (respondent), their newly formed "small business" or close corporation. Phillis and Van Den Berg had recently applied for patents on their design for cylinder heads used in recreational watercraft engines. They also had approached Cziraki, who owned a machining company, about forming a corporation to manufacture and sell parts based on their design. In discussions prior to the meeting, Phillis and Van Den Berg offered to assign their patent interests to Thunder Cats with the understanding Cziraki would oversee the manufacture of the parts. The parties memorialized this commitment to assign the patents to Thunder Cats in the minutes of the first board of directors meeting. The minutes do not mention any corresponding obligation by Cziraki.

The minutes also contain the parties' confirmation each of them would invest $2,000 in Thunder Cats in exchange for 200 shares of common stock per shareholder, in effect creating a three-way ownership stake in the company. After formalizing their officer roles, the parties deferred any discussion of officers' salary or other compensation until such time as the company generated enough revenue to warrant this discussion. The minutes do not mention any other profit-sharing or similar shareholder distribution strategies.

Shortly after they formed Thunder Cats with Cziraki, Phillis and Van Den Berg formed Vanlar, a separate company in which they held the only shareholder interests. Phillis and Van Den Berg never assigned their patent interests to Thunder Cats and instead exploited the patents on Vanlar's behalf. As a minority shareholder, Cziraki had limited power to enforce the original promise to assign the patents to Thunder Cats. Cziraki's relationship with Phillis and Van Den Berg deteriorated.

In December 1997, Cziraki filed derivative and individual claims against Thunder Cats, Phillis, and Van Den Berg. In his first amended complaint, Cziraki asserted derivative claims against Phillis and Van Den Berg for breach of fiduciary duty and usurpation of corporate opportunity, and prayed for assignment of the patents to Thunder Cats plus the imposition of a constructive trust to account for the company's lost profits and related

business opportunities. Cziraki asserted individual claims against Phillis and Van Den Berg for breach of fiduciary duty, fraud, and negligent misrepresentation.

The trial court found Phillis and Van Den Berg had breached their fiduciary duties to Thunder Cats and ordered them to assign their patents to Thunder Cats and to make payments of $172,000 and $86,000, respectively, to compensate the company for economic damages attributable to their failure to assign the patents as originally promised. The court also found Phillis and Van Den Berg had breached their fiduciary duties to Cziraki, as majority stockholders to a minority stockholder, but the court did not enter any damage award in favor of Cziraki as an individual stockholder.

Postjudgment, Cziraki filed a motion to recover attorney fees incurred in the prosecution of his successful derivative claim, invoking the common fund and substantial benefit doctrines. Because the trial judge had transferred to another court, a different judge heard the motion for attorney fees. The new judge pointed to portions of the record indicating the trial judge believed Cziraki's successful cause of action might justify an award of attorney fees.

At the hearing on the motion, the trial court commented it had never heard of applying either the common fund or substantial benefit doctrine to a suit concerning a close corporation. The court expressed doubt it had latitude to invoke either doctrine under circumstances in which all three of the shareholders had participated in the litigation. The court indicated it was relying on what little precedent was available to guide it.

In considering Cziraki's motion, the trial court also evaluated the feasibility of granting an award which would compensate Cziraki for the attorney fees incurred in the prosecution of the successful derivative claim, without including the fees associated with the individual claims. The court expressed concern over its ability to make such a distinction absent any direct observation of counsel's efforts. The court stated its reluctance to rely exclusively on the motion and supporting declaration of Cziraki's counsel.

The trial court requested supplemental briefing further addressing application of the equitable doctrines at issue and the apportionment of legal fees. The court specifically instructed Cziraki's counsel to provide more helpful and competent evidence to facilitate the court's determination of the total time and effort spent in pursuit of the successful derivative claim, and the amount of a reasonable fee award, should the court decide to grant the motion. After a second hearing, the court denied the motion.

The minute order does not reflect the trial court's rationale for denying the motion. The record supports the inference the court believed neither equitable

doctrine applied and, even if the court had decided to award fees, Cziraki and his counsel had not provided competent evidence to support a determination of a reasonable fee award.

DISCUSSION

## I. The Trial Court Erred in Concluding the Common Fund and Substantial Benefit Doctrines Do Not Apply.

Cziraki contends the trial court should have applied the common fund and substantial benefit doctrines to award him legal fees incurred in the prosecution of the successful derivative claim on the corporation's behalf. He argues the facts in this matter are different from those in the case law upon which the trial court relied.

In deciding Cziraki's motion, the trial court relied primarily on *Baker v. Pratt*[1] (a case we discuss below) to support its determination the common fund and substantial benefit doctrines do not permit an award of attorney fees in a derivative suit involving a close corporation with a small number of shareholders. Both Cziraki and Thunder Cats also focus primarily on the *Baker* case in their appellate briefs. We note there is a surprising dearth of California cases factually similar to the one currently before this court. Therefore, we expand the scope of our inquiry and consider the application of the equitable doctrines at issue in both California and out-of-state decisions.

### A. Courts Historically Have Applied the Common Fund and Substantial Benefit Doctrines to Shareholder Derivative Suits.

"Under the American rule, which is embodied in Code of Civil Procedure section 1021 in California, as a general proposition each party to a litigation must pay his or her own attorneys fees. There are statutory exceptions to this rule, and the courts have created several exceptions pursuant to their inherent equitable powers."[2] Exceptions to the American rule created under the courts' equitable powers include the "common fund" and "substantial benefit" doctrines.[3]

"[I]f the litigation has succeeded in creating or preserving a common fund for the benefit of a number of persons, the plaintiff may be awarded attorney

---

[1] *Baker v. Pratt* (1986) 176 Cal.App.3d 370 [222 Cal.Rptr. 253].

[2] *Baker v. Pratt, supra,* 176 Cal.App.3d at page 378.

[3] For general discussions of the common fund and substantial benefit doctrines, see 20 Am.Jur.2d (1995) Costs, sections 66–68; 19 Am.Jur.2d (1986) Corporations, sections 2487–2488; 16 Cal.Jur.3d (2002) Costs, section 115; 15 Cal.Jur.3d (1983) Corporations, section 526.

fees out of that fund. [Citation.] ■ Likewise, if a judgment confers a substantial benefit on a defendant, such as in a corporate derivative action, the defendant may be required to pay the attorney fees incurred by the plaintiff."[4] ■ In *Fletcher v. A. J. Industries*,[5] a California appellate court concluded a "substantial benefit" warranting an award of attorney fees to a successful plaintiff in a shareholder derivative action exists where "the results of the action 'maintain the health of the corporation and raise the standards of "fiduciary relationships and other economic behavior," ' or '*prevent*[s] [*sic*] an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest.' "[6] We agree with Cziraki's position the present case created for Thunder Cats both a common fund in the form of the monetary judgment against the majority shareholders and a substantial benefit in the form of the patent assignment, which preserved the corporation's main asset.

■ Courts generally apply the common fund and substantial benefit theories to cases involving a distinct class of beneficiaries,[7] among whom the costs of litigation can be fairly spread to prevent the unjust enrichment of class members at the expense of the successful litigant.[8] In a derivative action, the corporation represents the class of beneficiary shareholders. When the corporation pays attorney fees to the successful plaintiff, all shareholders indirectly share the cost of the beneficial litigation with the shareholder who brought the action. In contrast, when a shareholder brings a derivative suit for the true purpose of advancing his or her "personal adverse interests," neither equitable doctrine allows an award of attorney fees.[9]

As set forth above, many California cases discuss the common fund and substantial benefit doctrines in general.[10] We have found no California case, however, which has considered the application of these doctrines in a situation involving a representative or nonindividual judgment in favor of a

---

[4] *Baker v. Pratt, supra,* 176 Cal.App.3d at page 378.

[5] *Fletcher v. A. J. Industries* (1968) 266 Cal.App.2d 313 [72 Cal.Rptr. 146].

[6] *Fletcher v. A. J. Industries, supra,* 266 Cal.App.2d at page 324, quoting *Bosch v. Meeker Co-op. Light & Power Association* (1960) 257 Minn. 362 [101 N.W.2d 423, 426, 427].

[7] See, e.g., *Long Beach City Employees Association, Inc. v. City of Long Beach* (1981) 120 Cal.App.3d 950 [172 Cal.Rptr. 277] (nonunion members); *Mandel v. Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244] (California taxpayers); *In re California Mutual Building and Loan Association of San Jose* (1945) 68 Cal.App.2d 82 [155 P.2d 876] (investors and mutual shareholders in an insolvent building and loan association).

[8] See *Fletcher v. A. J. Industries, supra,* 266 Cal.App.2d at page 324.

[9] See 7 Witkin, California Procedure (4th ed. 1997) Judgment, section 215, page 748 ("fees will be *denied* where the ultimate objective of the suit is not to secure or preserve a common fund but to establish the plaintiff's personal adverse interests therein," citing *Baker v. Pratt, supra,* 176 Cal.App.3d at p. 379).

[10] See footnote 6, *ante.*

close and *extant* corporation which is even remotely similar to the situation involved in the present action.

    B.   *Cziraki Pursued a Proper Derivative Claim and the Litigation Did Not Confer Any Individual Benefit to Him.*

Cziraki argues there is no legal or doctrinal restriction on applying the common fund or substantial benefit doctrine to recover legal fees incurred in pursuit of a derivative claim against a close corporation. Cziraki urges this court to rule the doctrines apply whenever (1) a shareholder derivative suit results in a substantial benefit to the corporation on whose behalf the plaintiff has brought suit, and (2) the judgment confers upon the plaintiff no individual benefit separate from that received by all of the shareholders. For the reasons discussed below, we are inclined to agree.

As a starting point in our analysis, we discuss *Baker v. Pratt*[11] and our view this decision represents a more narrow holding than the trial court's and Thunder Cats' interpretations would suggest. Baker and Pratt were the only two shareholders of two construction companies and they also co-owned other business entities. After a falling out between them, they agreed to sever all of their business relationships and form separate construction companies. The agreement the parties reached "(which was later determined to be legally improper) broke down, and [Baker] was thereafter effectively shut out of the corporate enterprises."[12] The dispute resulted in the filing of six separate lawsuits which the trial court consolidated. The lawsuits involved claims by Baker against Pratt, claims by Baker's solely owned construction company against one of the companies the parties jointly owned, and claims by Baker for involuntary dissolution of the two jointly owned construction companies. The litigation also involved various cross-actions.

The trial court entered a monetary judgment against Pratt in favor of Baker and each of the jointly owned construction companies. Applying the common fund and substantial benefit doctrines, the court ordered one of the jointly owned companies to pay Baker's attorney fees.[13] The Court of Appeal reversed the award of attorney fees on the ground "a class of passive beneficiaries" must exist to justify an award of attorney fees under a common fund or substantial benefit theory.[14] The appellate court indicated a successful representative plaintiff could not invoke either doctrine to recover fees when

---

[11] *Baker v. Pratt, supra,* 176 Cal.App.3d 370.

[12] *Baker v. Pratt, supra,* 176 Cal.App.3d at page 376.

[13] *Baker v. Pratt, supra,* 176 Cal.App.3d at page 377.

[14] *Baker v. Pratt, supra,* 176 Cal.App.3d at pages 379–380.

all of the shareholders, in this instance only two, were parties to the litigation at issue and one shareholder benefited to the other's detriment.[15]

In *Avikian v. WTC Financial Corp.,*[16] the Court of Appeal interpreted the passive beneficiary or identifiable class requirement in *Baker* as a way to assist the court's determination of whether the representative litigation in reality concerned a direct (individual) claim, which would rightfully bar recovery of attorney fees: "Thus, *Baker* makes clear that if corporate share-holders are seeking to advance their individual interests, rather than the interests of the corporation generally, no fees should be awarded on a common fund or substantial benefit theory. Consequently, to the extent appellants in this case were seeking to vindicate individual as opposed to derivative rights ... they could not recover fees as a matter of law."[17]

Cziraki convincingly argues his derivative claims served a discernible interest separate from any individual adverse interest he may otherwise have sought to benefit. He pursued his "personal adverse interests" through separate individual claims rather than through his derivative claims, and judgment at trial conferred no benefit on Cziraki as an individual claimant.[18] Cziraki concedes he brought individual claims, which proved unsuccessful, alongside his successful derivative claim, but insists Thunder Cats was the only party to benefit from the litigation.[19] The benefits resulting from the litigation were Thunder Cats' acquisition of the promised patent interests, the potential to exploit those interests, the preservation of the company's where-withal, and an interest in any future profits should they materialize—all equally shared among the other shareholders. In no sense did Cziraki derive any individual benefit from the litigation. Neither the trial court nor Thunder

---

[15] *Baker v. Pratt, supra,* 176 Cal.App.3d at pages 379–380. The *Baker* court cited *Gabrielson v. City of Long Beach* (1961) 56 Cal.2d 224 [14 Cal.Rptr. 651, 363 P.2d 883] in support of its decision. In that case, the trial court denied attorney fees to a plaintiff who had initiated litigation against the City of Long Beach, ostensibly to prevent the city from claiming revenue rightfully owed to the state for offshore mineral leases. The plaintiff argued the judgment preserved a common fund for the state, which warranted an award of attorney fees under the common fund theory. (56 Cal.2d at pp. 228–229.) In denying the plaintiff's claim, the trial court pointed to competent and reliable evidence indicating the plaintiff (and her counsel) secretly hoped to profit from their pending mineral lease applications for the lands at issue in the case, and had pursued the litigation for their own benefit. (56 Cal.2d at pp. 230–231.) The Supreme Court affirmed. (56 Cal.2d at p. 234.)

[16] *Avikian v. WTC Financial Corp* (2002) 98 Cal.App.4th 1108 [120 Cal.Rptr.2d 243].

[17] *Avikian v. WTC Financial Corp., supra,* 98 Cal.App.4th at page 1118. For an application of this principle in a more general context, see Thompson, *The Shareholder's Cause of Action for Oppression* (1993) 48 Bus.Law. 699, 732–733.

[18] Indeed, nowhere in its appellate brief does Thunder Cats contend Cziraki's successful claim was improperly classified as a derivative claim.

[19] Cziraki prevailed on his individual claim against Phillis and Van Den Berg for breach of fiduciary duty, but the court did not award him any damages.

Cats identified any evidence to suggest Cziraki pursued his derivative claims in the hopes of receiving an individual benefit or adverse personal interest.

Cziraki's litigation conferred a substantial benefit on Thunder Cats, and the class of shareholders—albeit tiny—benefits as a result of Cziraki's action. Unlike the ultimate outcome in *Baker*, any award to Thunder Cats would not be immediately passed on to individual shareholders through a dissolution proceeding. The judgment in the present case reveals a clear distinction between the derivative interests of the shareholders and their individual adverse interests.

Like *Baker*, all of the shareholders in Thunder Cats participated in the litigation. Unlike *Baker*, however, the judgment in the present case did not award Cziraki any individual award or benefit, nor did the present case involve the dissolution of the corporate entity.[20] Because the *Baker* court conflated the ultimate interests of individual shareholders with those of the dissolved corporations, its holding does not provide any guidance for distinguishing an individual's adverse interest from a generalized shareholder interest where a derivative suit involves a surviving close corporation and all of its shareholders. Absent a trial court finding Cziraki in reality was pursuing a personal adverse interest through his derivative claims, we see no reason to apply *Baker* to the present case.

### C. The Weight of Out-of-State Authority Militates Against Applying Baker in This Case.

We have found a number of out-of-state decisions which involve derivative shareholder suits concerning close corporations with two or three total shareholders.[21] These cases were decided in five different states over three decades, and every one of the courts directly or indirectly invoked the common fund or substantial benefit doctrine in support of its order the corporation pay attorney fees to the successful derivative plaintiff. The cases discussed below each touch upon (and defeat) some aspect of Thunder Cats' argument in favor of applying *Baker* to the present case.

In *De Fontaine v. Passalino*, the defendant majority shareholder unsuccessfully cited *Baker* in its attempt to persuade the Appellate Court of Illinois to

---

[20] It is clear from the record no party sought dissolution at any stage of the proceedings.

[21] *Jones v. Uris Sales Corporation* (2d Cir. 1967) 373 F.2d 644; *Millsap v. Lane* (1986) 288 Ark. 439 [706 S.W.2d 378]; *Lasday v. Weiner* (1995) 273 Ill.App.3d 461 [652 N.E.2d 1198, 210 Ill.Dec. 222]; *De Fontaine v. Passalino* (1991) 222 Ill.App.3d 1018 [584 N.E.2d 933, 165 Ill.Dec. 499]; *DRW Builders, Inc. v. Richardson* (Ind.Ct.App. 1997) 679 N.E.2d 902; *Cole Real Estate Corporation v. Peoples Bank and Trust Company* (1974) 160 Ind. Ct. App. 88 [310 N.E.2d 275]; *Glenn v. Hoteltron Systems, Inc.* (1989) 74 N.Y.2d 386 [547 N.E.2d 71, 547 N.Y.S.2d 816]; *Interlake Porsche & Audi, Inc. v. Bucholz* (1986) 45 Wash.App. 502 [728 P.2d 597].

overturn the trial court's award of attorney fees in a shareholder derivative suit involving the two sole shareholders of the corporation.[22] The court concluded: "If we were to adopt defendant's reasoning [the court should follow *Baker*], we are confronted with the question of just how many beneficiaries are needed for the common-fund doctrine to apply. In small, closely held corporations, those who own the majority interests and control the corporation and are found liable to the corporation for certain damages could argue that they are penalized by an award of attorney fees from the corporation.... We find the better approach is to award plaintiff reasonable attorney fees from the corporation's common fund despite the fact that there are only two shareholders in this case."[23] The appellate court endorsed the trial court's rationale for awarding attorney fees: "The trial court in the instant case noted that the common-fund doctrine was not applicable solely for 'passive beneficiaries.' It found that the doctrine encouraged meritorious derivative actions by small shareholders and that this purpose [was] applicable whether there were two shareholders or hundreds. The other purpose cited by the [trial] court was the benefit to the corporation for which it would have had to pay for itself."[24]

In *Lasday v. Weiner*, another Illinois appellate court cited *De Fontaine* with approval four years later in a derivative action involving the two sole shareholders of a close corporation: "Illinois law is clear that attorney's fees may be properly awarded in a derivative action even where there are only two shareholders."[25]

In *DRW Builders, Inc. v. Richardson*, the Indiana Court of Appeals affirmed in part a trial court's award of attorney fees to a minority shareholder who won a derivative suit against the two other shareholders of a close corporation.[26] The appellate court addressed the defendants' contention the case did not warrant an award of fees because the plaintiff also had brought direct (individual) claims in the same action: "[T]o the extent that the attorney fee award represents reimbursement for time expended pursuing [the plaintiff's] direct action, it cannot stand.... Nonetheless, because the corporation is the beneficiary of the recovery of funds or of the corrective benefit of a

---

[22] *De Fontaine v. Passalino, supra,* 584 N.E.2d at pages 943, 944 (the defendant "argue[d] that since only plaintiff and defendant share in the fund, it is inequitable to award fees. (*Baker v. Pratt* (1986), 176 Cal.App.3d 370 [222 Cal.Rptr. 253]; [citation])").

[23] *De Fontaine v. Passalino, supra,* 584 N.E.2d at pages 946–947.

[24] *De Fontaine v. Passalino, supra,* 584 N.E.2d at page 946.

[25] *Lasday v. Weiner, supra,* 652 N.E.2d at page 1201.

[26] *DRW Builders, Inc. v. Richardson, supra,* 679 N.E.2d at page 909. The court affirmed the trial court's application of the common fund doctrine but remanded the cause "for an entry of judgment entitling [the plaintiff] to recover [attorney] fees from DRW" rather than directly from the other two shareholders who had harmed the corporation.

derivative action, the corporation bears the expense of attorneys' fees in shareholder derivative suits."[27]

Courts in New York, Washington, and Arkansas have reached similar results for similar reasons in close corporation cases involving two or three shareholders.[28] We did not find any out-of-state cases disallowing attorney fee awards under these circumstances.

In applying the common fund and substantial benefit doctrines, the courts in the matters discussed above did not focus on the size or type of corporation or the number of shareholders participating in the litigation. The courts directed their attention to whether or not the derivative litigation had conferred a discernable benefit on the corporation and whether or not equity demanded the corporation reimburse the party whose action brought about the benefit. We find the rationale of these cases persuasive. ▄ When a corporation is the sole beneficiary of a derivative shareholder suit, we conclude it should bear the costs associated with obtaining that benefit.

D. *To Interpret Baker as Disallowing an Attorney Fee Award in This Case Would Undermine the Equitable Purposes Served by the Common Fund and Substantial Benefit Doctrines in Derivative Suits.*

Strict adherence to the criteria suggested in *Baker* for when the common fund and substantial benefit doctrines apply would make it virtually impossible for a minority shareholder in a close corporation with few shareholders to recover attorney fees in a successful derivative suit in which another shareholder has injured the corporation. In its discussion of the evolution of the substantial benefit doctrine in California, *Baker* describes *Fletcher* as the "seminal case" establishing the substantial benefit doctrine as an outgrowth of the common fund doctrine.[29] Nowhere in *Fletcher,* however, does the court suggest either doctrine should not apply where all of the shareholders were party to the suit or when one (or all but one) shareholder must compensate the corporation for harmful misconduct. According to *Fletcher*, the primary purpose for extending the substantial benefit doctrine to representative suits which do not create a common fund is to encourage minority shareholders to pursue their rights and thereby promote responsible corporate governance.[30]

---

[27] *DRW Builders, Inc. v. Richardson, supra,* 679 N.E.2d at page 909.

[28] For similar discussions and outcomes, see, e.g., *Glenn v. Hoteltron Systems, Inc., supra,* 547 N.E.2d 71; *Interlake Porsche & Audi, Inc. v. Bucholz, supra,* 728 P.2d 597; *Millsap v. Lane, supra,* 706 S.W.2d 378.

[29] *Baker v. Pratt, supra,* 176 Cal.App.3d at page 379.

[30] *Fletcher v. A. J. Industries, supra,* 266 Cal.App.2d at page 324.

As illustrated in the preceding discussion, we see no reason why this rationale should not apply to cases involving disputes among a small class of shareholders.[31]

We are not persuaded by Thunder Cats' argument Cziraki is the only member of the shareholder class who actually benefits from the derivative claim. Like the losing party in *Baker*, Thunder Cats contends because the nonprevailing class members must pay damages for harming the company and therefore suffer personal losses, they do not benefit from Cziraki's litigation.[32] But Thunder Cats, the corporation, benefits regardless of the effect of the judgment on individual shareholders, and, absent Cziraki's lawsuit, would still be without its main asset, the patent interests promised by Phillis and Van Den Berg.

To accept Thunder Cats' interpretation of the holding in *Baker* and apply it to deny Cziraki an attorney fee award would undermine the equitable principles articulated in *Fletcher*. According to this interpretation, the only time a plaintiff in a derivative suit involving a close corporation could properly invoke an equitable doctrine in seeking attorney fees would be in a successful suit which benefited a shareholder class of a certain, unspecified size or when at least one shareholder had not participated in the litigation.[33] A broad reading of *Baker* would create a negative incentive for a shareholder in a close corporation with few other shareholders to seek a legal remedy or to join a suit on behalf of a company in which he or she had any interest. It would have the same effect on any attorney who might otherwise represent such a shareholder in the hope of recovering fees from a better-funded company on whose behalf he or she has litigated.

We would not encourage any court to invoke an equitable doctrine to award attorney fees where the judgment only confers a benefit on an

---

[31] Failure to apply the equitable doctrines in this case would suggest a minority shareholder in a close corporation should be treated like any other individual trying to enforce a duty owed him by another, even though he and those owing the duty to him and the corporation had previously chosen to organize their affairs not as among individuals but as a corporation. Perhaps in reality disputes among shareholders in close corporations more closely resemble common contract disputes among individuals than those arising among shareholders in larger corporations, but the fact remains no individual interests benefited from Cziraki's lawsuit.

[32] See *Lasday v. Weiner, supra*, 652 N.E.2d at page 1201, where the court rejected a strikingly similar argument; see also *Glenn v. Hoteltron Systems, Inc., supra*, 547 N.E.2d at page 74, for a related discussion of the potentially questionable deterrent effect of assessing damages (to be paid to the corporation) against a shareholder, who suffers from the damage award as an individual but benefits from it as a shareholder. The court viewed the incidental gain to the shareholder as a tolerable side effect of making whole the corporation whose interests the shareholder has harmed and preferred this side effect to having a different damages rule for close corporations.

[33] See previous discussion of *De Fontaine v. Passalino, supra*, 584 N.E.2d 933 at pages 561–562, *ante*.

individual shareholder's personal interests. Just the same, we are reluctant to abrogate the rights of shareholders in close corporations. Accordingly, we decline to extend *Baker* as a blanket rule disallowing attorney fee awards in any derivative suit merely because the litigation involves the entire class of shareholders in a close corporation. Thus, we conclude the trial court erred in refusing to apply the common fund and substantial benefit doctrines in this case.

II.  *Based on the Evidence Presented Below, the Trial Court Did Not Abuse Its Discretion in Denying Cziraki's Motion for Attorney Fees, but We Remand the Matter to Give Cziraki Another Opportunity to Properly Support His Motion.*[*]

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### DISPOSITION

The order is reversed as to the application of the common fund and substantial benefit doctrines, and the cause is remanded to the trial court for a determination of a reasonable attorney fees award, consistent with the views expressed in this opinion. Each party is to bear his/its own costs on appeal.[46]

Woods, J., and Munoz (Aurelio), J.,[†] concurred.

Respondent's petition for review by the Supreme Court was denied November 19, 2003.

---

[*] See footnote, *ante*, page 552.

[46] In accordance with our decision reversing the order in part, respondent's motion to dismiss the appeal as frivolous and its request for sanctions are denied.

[†] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.